[No. 20659.  In Bank. —February 19, 1892.]

# THE PEOPLE, RESPONDENT, v. JOHN McNULTY, APPELLANT.

93   427
95   429
93   427
102   35
93   427
105   343
93   427
119   205
93   427
137   593

CRIMINAL LAW — PAST OFFENSES — STATUTORY CONSTRUCTION — GENERAL SAVING CLAUSE. — A permanent saving clause in the general body of the law, if clothed in apt language to express the purpose, is as efficient as a special clause expressly inserted in a particular statute, saving the operation of a repealed statute in its applicability to past criminal offenses.

ID. — REPEAL BY AMENDMENT. — A statute re-enacting a former statute regulating the punishment of crime, and providing that each section thereof "is hereby amended so as to read as follows," repeals all contained in the sections amended that is not contained in the sections as re-enacted.

ID. — HOMICIDE — CHANGE OF PUNISHMENT — EFFECT OF CODE. — Section 329 of the Political Code, providing that "the repeal of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act," constitutes a general saving clause; and the act of the legislature of March 31, 1891, amending and re-enacting former sections, and prescribing a different and more severe punishment for murder, although containing no express saving clause, will be held to apply only to future offenses, leaving past offenses to be punished under the law in force at the date when the offenses were committed.

ID. — CONSTRUCTION OF CODE — REPEAL OF LAW CREATING OFFENSE. — A law repealing the punishment of an offense is within the meaning of the terms of section 329 of the Political Code enacting a general saving clause, where a law is repealed "creating" a criminal offense.

ID. — RELATION OF PUNISHMENT TO CRIME — EFFECT OF REPEAL. — A description or definition of acts necessary to constitute a crime does not make the commission of such acts a crime, unless there is a punishment annexed. Punishment is as necessary to constitute a crime as definition, and the repeal of either is a repeal of the whole law creating the crime.

ID. — HOMICIDE — DEFENSE OF INSANITY — PRESUMPTION — BURDEN OF PROOF. — A person is presumed to be sane until the contrary is shown, and where a defendant charged with murder relies upon insanity as a defense, the burden is upon him to show it by a preponderance of evidence.

ID. — SENTENCE — DEGREE OF MURDER. — A judgment stating that the sentence of the defendant was for murder of which he had been convicted is sufficient, although it fails to show the degree of the murder.

ID. — INFORMATION — MURDER OF HUMAN BEING. — An information charging a defendant with having murdered "one James Collins" sufficiently charges the murder of a human being.

ID. — AMENDMENT OF MINUTES NUNC PRO TUNC — POWER OF TRIAL COURT — PENDENCY OF APPEAL. — The trial court has the power to amend its minutes nunc pro tunc, even pending appeal, so as to conform to the true state of facts.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*J. N. E. Wilson,* and *Wilson & Trout,* for Appellant.

The instructions to the jury upon the subject of the burden of proof and the preponderance of evidence are erroneous, and misled the jury, greatly to the prejudice of defendant. The law of reasonable doubt was not properly stated. (*People* v. *Smith,* 59 Cal. 602; *People* v. *Flanagan,* 60 Cal. 2; *People* v. *Bushton,* 80 Cal. 160; *People* v. *Elliott,* 80 Cal. 296; *People* v. *Lanagan,* 81 Cal. 142; *People* v. *Boling,* 83 Cal. 380; *People* v. *Cohn,* 76 Cal. 386; *People* v. *Iams,* 57 Cal. 121; Wharton's Crim. Ev., sec. 335; *Thompson* v. *People,* 3 Park. Cr. 208; *State* v. *Wheeler,* 3 Vt. 344; 23 Am. Dec. 212; *People* v. *Allen,* 5 Denio, 76; *Hess* v. *State,* 5 Ohio, 5; 22 Am. Dec. 767; *People* v. *Cronin,* 34 Cal. 208; Wharton's Crim. Ev., 8th ed., sec. 124; *Cohen* v. *People,* 5 Park. Cr. 330; *United States* v. *Cruikshank,* 92 U. S. 557; *United States* v. *Feass,* 3 Woods, 513; *United States* v. *Cook,* 17 Wall. 174; *United States* v. *Prescott,* 2 Abb. 169; *United States* v. *Winslow,* 3 Saw. 337.)

*Carroll Cook, J. E. Foulds,* and *William Hoff Cook, amici curiæ,* also for Appellant.

The judgment was insufficient, as not showing whether the defendant was convicted and sentenced for murder in the first or second degree. (See *People* v. *Campbell,* 40 Cal. 129; *People* v. *O'Neil,* 78 Cal. 388; *People* v. *Travers,* 73 Cal. 580; 77 Cal. 176; *Ex parte Murray,* 43 Cal. 455; *People* v. *Northey,* 77 Cal. 635.) The information is fatally defective in failing to allege that the murder was of a human being. Murder is the unlawful killing of a human being. (Pen. Code, sec. 187.) A material element of the crime being the murder of a human being, it should have been charged and proven. Every traversable fact in an indictment must be directly alleged.

(*State* v. *La Bore*, 26 Vt. 765; *People* v. *Crotty*, 93 Ill. 181; *Collins* v. *People*, 39 Ill. 233; *Williams* v. *State*, 2 Ind. 439.) An indictment should contain an allegation of every fact essential to the punishment inflicted. All that is to be proved must be alleged. (*State* v. *Buster*, 90 Mo. 514; *People* v. *Van Pelt*, 4 How. Pr. 36; *Frazer* v. *People*, 54 Barb. 306; *People* v. *Stockham*, 1 Park. Cr. 424; *State* v. *Jones*, 11 Crim. Law Mag. 64 (S. C.); *Vollmer* v. *State*, 24 Neb. 838; *People* v. *Knapp*, 71 Cal. 1; *McDougal* v. *State*, 88 Ind. 24; 1 Bishop's Crim. Proc., secs. 1050, 1051; 1 Greenl. Ev., sec. 74; *People* v. *Garbutt*, 17 Mich. 9; 97 Am. Dec. 162; *Brotherton* v. *People*, 75 N. Y. 159; *O'Connell* v. *People*, 87 N. Y. 377; 41 Am. Rep. 379; *Guetig* v. *State*, 66 Ind. 94; *Cunningham* v. *State*, 56 Miss. 269; 21 Am. Rep. 360; *Wright* v. *People*, 4 Neb. 407; *State* v. *Hundley*, 46 Mo. 414; *State* v. *Bartlett*, 43 N. H. 224; 80 Am. Dec. 154; *Hopps* v. *People*, 31 Ill. 385; 83 Am. Dec. 231; *Chase* v. *People*, 40 Ill. 352; *Commonwealth* v. *McKie*, 1 Gray, 61; 61 Am. Dec. 410; *Dacy* v. *People*, 4 West Coast Rep. 180; *State* v. *Simms*, 68 Mo. 305; *Crawford* v. *State*, 12 Ga. 142; *State* v. *Marler*, 2 Ala., N. S., 43; 36 Am. Dec. 398; *Hart* v. *State*, 14 Neb. 572; *Stevens* v. *State*, 31 Ind. 485; 99 Am. Dec. 634; *Bradley* v. *State*, 31 Ind. 492; *Moett* v. *People*, 85 N. Y. 373.) Every one is presumed sane until the contrary is proved as a substantive fact, and the burden of proof is on the defendant; yet he should have the benefit of a reasonable doubt. But he is required merely to raise a reasonable doubt of his sanity, whereupon the burden of proof falls upon the prosecution. (*State* v. *Felter*, 32 Iowa, 49; *State* v. *Richards*, 39 Conn. 591; *Mitchell* v. *State*, 63 Ind. 276; *State* v. *Holme*, 54 Mo. 164; *Bonfanti* v. *State*, 2 Minn. 123; *State* v. *Brandon*, 8 Jones, 463; *Flanagan* v. *People*, 52 N. Y. 467; *Bergin* v. *State*, 31 Ohio St. 111; *McKenzie* v. *State*, 26 Ark. 334; *Laros* v. *Commonwealth*, 84 Pa. St. 200; *State* v. *Jones*, 50 N. H. 369; 9 Am. Rep. 242; *People* v. *Garbutt*, 17 Mich. 9; 97 Am. Dec. 162.) If there is a reasonable doubt of the defendant's guilt, the jury must acquit; and if by parity of reason there is a reasonable doubt of his sanity, they

must in like manner aquit. (*People* v. *McCann*, 16 N. Y. 58; 99 Am. Dec. 642; *State* v. *Jones*, 50 N. H. 370; 9 Am. Rep. 242; *People* v. *Garbutt*, 17 Mich. 9; 97 Am. Dec. 162; *Wagner* v. *People*, 4 Abb. App. 509; *Stevens* v. *State*, 31 Ind. 485; 99 Am. Dec. 634; *State* v. *Crawford*, 11 Kan. 32; *State* v. *Johnson*, 40 Conn. 136; *Commonwealth* v. *McKie*, 1 Gray, 61; 61 Am. Dec. 410; *State* v. *Marler*, 2 Ala. 43; 36 Am. Dec. 398.) Doubts of sanity amount to doubts of the intent, which must always be proved. (3 Coke, 47; 4 Bla. Com. 195; *Hazel's Case*, Head C. C. 383.) If a reasonable doubt is thrown upon a *prima facie* case of guilt, the party accused is not proven guilty beyond a reasonable doubt. (*State* v. *Merrick*, 19 Me. 398; *State* v. *Bennett*, 3 Brev. 514; *Jones* v. *People*, 12 Ill. 259.) The statute of March 31, 1891, amended sections 187 and 1217 of the Penal Code, and completely wiped out such sections. (Const., art. IV., sec. 24; *Billings* v. *Harvey*, 6 Cal. 383; *Treadwell* v. *Yolo County*, 62 Cal. 564; *Billings* v. *Hall*, 7 Cal. 1; *Morton* v. *Folger*, 15 Cal. 284; *Clarke* v. *Huber*, 25 Cal. 596; *Bensley* v. *Ellis*, 39 Cal. 313. See also *Commonwealth* v. *Marshall*, 11 Pick. 350; 22 Am. Dec. 377; *Butler* v. *Palmer*, 1 Hill, 330.) The effect of sending the defendant to the state prison to be executed is to impose upon him the additional penalty of imprisonment in a state prison, which of itself is a punishment, and to enforce upon him hard labor. (*Ex parte Arras*, 78 Cal. 304; *Ex parte Wadleigh*, 82 Cal. 519; *Ex parte Kelly*, 65 Cal. 154. See *Ex parte Bernert*, 62 Cal. 530.) No matter how slight the additional punishment or penalty is, if a statute is passed after the commission of a crime, which imposes any or the most trifling additional punishment, or changes the manner of punishment to the prejudice of the prisoner, or deprives him of any right, statutory or constitutional, which he had at such time, it is, as to him, an *ex post facto* law, and consequently in violation of the constitution of this state, as well as that of the United States. (Const., art. I., sec. 16; U. S. Const., art. I., secs. 9, 10; *Calder* v. *Bull*, 3 Dall. 386; *Fletcher* v. *Peck*, 6 Cranch, 87;

*Watson* v. *Mercer,* 8 Pet. 109; *Ogden* v. *Saunders,* 12 Wheat.
266; *Cummings* v. *State,* 4 Wall. 277; *Hartung* v. *People,*
22 N. Y. 97; 26 N. Y. 167; *Ex parte Garland,* 4 Wall.
333; *Shepherd* v. *People,* 25 N. Y. 406; *Davis* v. *Pierse,* 7
Minn. 13; 82 Am. Dec. 65.) Although it was within the
power of the legislature to pass the new law, yet by
failing to insert therein a saving clause there is no ex-
isting law applicable to the defendant. (*Ex parte Med-*
*ley,* 134 U. S. 160; *Ex parte Savage,* 134 U. S. 177; *State*
v. *McDonald,* 20 Minn. 137; *Wilson* v. *Ohio etc. R. R.*
*Co.,* 64 Ill. 545; 16 Am. Rep. 565.) The defendant can-
not be executed under the new law, because it became a
law subsequent to the commission of the act complained
of, and cannot affect him, even though it had been an
exact copy of the old law, which was then repealed.
(*Billings* v. *Harvey,* 6 Cal. 383; *Hartung* v. *People,* 22
N. Y. 99, 100; 1 Hale P. C. 291; *Miller's Case,* 1 W. Black.
451; *Rex* v. *McKenzie,* Russ. & R. C. C. 429; *The Queen* v.
*Inhabitants of Mawgan,* 8 Ad. & E. 496; *The Queen* v.
*Inhabitants of Denton,* 14 Eng. L. & Eq. 124; *Surtees*
v. *Ellison,* 9 Barn. & C. 750; *United States* v. *Passmore,*
4 Dall. 372; 1 Wash. C. C. 84; *Commonwealth* v. *Duane,*
1 Binn. 60; 2 Am. Dec. 497; *Yeaton* v. *United States,* 5
Cranch, 281; *Schooner Rachel* v. *United States,* 6 Cranch,
329; *Commonwealth* v. *Marshall,* 11 Pick. 350; 22 Am.
Dec. 377; *Commonwealth* v. *Kimball,* 21 Pick. 373; *Butler*
v. *Palmer,* 1 Hill, 324; *Key* v. *Goodwin,* 4 Moore & P. 341–
350.) Section 329 of the Political Code, claimed to oper-
ate as in lieu of a definite saving clause in the amenda-
tory act, refers solely to statutes creating offenses. The
word " creating " should not be given any broader signifi-
cation than it itself implies. (*People* v. *Tisdale,* 57 Cal.
104; *City of Eureka* v. *Diaz,* 89 Cal. 469.) The statute
in question, being a part of the code, did not create the
offense. (Pen. Code, sec. 5.) The repeal of a statute
providing solely for a punishment does not in any man-
ner affect the crime itself as it existed and had been cre-
ated by law. (*State* v. *Daley,* 29 Conn. 275.) The code
does not create the offense, but only declares what existed

before, and there would be no change in the crime itself by making classes of murder punishable with death. (*Commonwealth* v. *Gardner,* 77 Mass. 442, 443.) The following additional authorites were also cited as having been referred to generally upon the oral argument: *Little* v. *Cogswell,* 25 Pac. Rep. 727; *State* v. *Andrews,* 20 Tex. 230; *People* v. *Gill,* 7 Cal. 356; *People* v. *Nolan,* 115 N. Y. 660; *Tape* v. *Hurley,* 66 Cal. 474.

*Attorney-General Johnson,* for Respondent.

As there is no bill of exceptions, there is nothing to show that there was any evidence as to the insanity of the defendant; and as a case will not be reversed, in the absence of evidence, if under any conceivable state of facts the instruction would be correct, the instruction relating to insanity may be treated as mere surplusage. (*People* v. *Smith,* 57 Cal. 130; *People* v. *Gilbert,* 60 Cal. 108; *People* v. *Johnson,* 61 Cal. 142; *People* v. *Cochran,* 61 Cal. 548; *People* v. *De Silvera,* 59 Cal. 592; *People* v. *Salorse,* 62 Cal. 140; *People* v. *Hope,* 62 Cal. 292; *People* v. *Smith,* 59 Cal. 601; *People* v. *Ye Park,* 62 Cal. 204.) But the instruction relating to the insanity of the defendant was not erroneous, as it is well settled that a defendant must establish his insanity by a preponderance of evidence. (*People* v. *Coffman,* 24 Cal. 230; *People* v. *Wilson,* 49 Cal. 13; *People* v. *Bell,* 49 Cal. 485; *People* v. *Myers,* 20 Cal. 518; *People* v. *Wreden,* 59 Cal. 392; *People* v. *Pico,* 62 Cal. 50; *People* v. *Hamilton,* 62 Cal. 377; *People* v. *McDonnell,* 47 Cal. 134; *People* v. *Eubanks,* 86 Cal. 295; *People* v. *Boswell,* 63 Ala. 307; 35 Am. Rep. 20; *People* v. *Parsons,* 9 Crim. Law Mag. 812; *People* v. *Ford,* 5 Crim. Law Mag. 32; *McKenzie* v. *State,* 26 Ark. 334; *People* v. *Hoyt,* 47 Conn. 541; 36 Am. Rep. 89; *State* v. *Redemeier,* 71 Mo. 173; 36 Am. Rep. 462; *Commonwealth* v. *Rodgers,* 7 Met. 500; 41 Am. Dec. 458; *Commonwealth* v. *McKie,* 1 Gray, 61; 61 Am. Dec. 410; *Commonwealth* v. *Eddy,* 7 Gray, 584; *Commonwealth* v. *Heath,* 11 Gray, 303; *Ortwein* v. *Commonwealth,* 76 Pa. St. 414; *Lynch* v. *Commonwealth,* 77 Pa. St. 205; *Brown* v. *Commonwealth,* 78 Pa. St.

128; *Meyers* v. *Commonwealth,* 79 Pa. St. 311; *Pannell* v. *Commonwealth,* 86 Pa. St. 268; *Sayres* v. *Commonwealth,* 88 Pa. St. 291; *People* v. *Coyle,* 100 Pa. St. 573; 45 Am. Rep. 397; *State* v. *Felter,* 32 Iowa, 49; *Loeffner* v. *State,* 10 Ohio St. 598; *Bond* v. *State,* 23 Ohio St. 349; *Bergin* v. *State,* 31 Ohio St. 111; *State* v. *Starling,* 6 Jones, 366; *State* v. *Frank,* 5 Jones, 384; *People* v. *Merrick,* 19 Me. 398; *People* v. *Lawrence,* 57 Me. 574; *People* v. *Graves,* 45 N. J. L. 347; 46 Am. Rep. 778; *People* v. *Graham,* 16 B. Mon. 587; *People* v. *Stark,* 1 Strob. 474; *People* v. *Bundy,* 24 S. C. 439; 58 Am. Rep. 262; *Webb* v. *People,* 5 Tex. App. 596; *Clark* v. *People,* 8 Tex. App. 350; *King* v. *People,* 9 Tex. App. 515; *People* v. *Strander,* 11 W. Va. 823; *People* v. *Gut,* 13 Minn. 341; *Carter* v. *People,* 56 Ga. 463; *People* v. *Huting,* 21 Miss. 477; *People* v. *Martin,* 10 Wash. L. Rep. 33; 1 Wharton's Crim. Ev., 8th ed., secs. 60, 336; *People* v. *McCann,* 16 N. Y. 58; 69 Am. Dec. 643–650; *Reg.* v. *McNaughton,* 10 Clark & F. 200; *Reg.* v. *Layton,* 4 Cox C. C. 149; *Reg.* v. *Stokes,* 3 Car. & K. 188; *Reg.* v. *Higginson,* 1 Car. & K. 130; 1 Wharton and Stillé's Med. Jur., sec. 262; 18 Cent. L. J. 402–405.)   As to the contention that the information does not show that the deceased was a human being, it is sufficient to say that a similar one was sustained in *People* v. *Alviso,* 55 Cal. 231.

*Attorney-General Hart,* for Respondent, upon rehearing.

The instructions upon the question of sanity were proper. (*People* v. *Travers,* 88 Cal. 233; *People* v. *Bawden,* 90 Cal. 195.)   The law is constitutional, not *ex post facto,* and can be enforced as to all cases, past, present, and future, as there is nothing in the amendments increasing the punishment. (*Holt* v. *State,* 2 Tex. 363; *Marion* v. *State,* 20 Neb. 233; 57 Am. Rep. 825; *People* v. *Mortimer,* 46 Cal. 114; *Ex parte Bethurum,* 66 Mo. 545; *Ex parte Williams,* 87 Cal. 78.)   The legislature may lawfully substitute a different punishment for past offenses, which may be less or equal to the penalty pre-

scribed when the offense was committed, but must not be greater. (*State* v. *Kent,* 65 N. C. 311; *Turner* v. *State,* 40 Ala. 21; *Caldwell* v. *State,* 55 Ala. 133.) The statement in the judgment fixing the time, place, and manner of execution, and name of officer, is not necessarily a part of a judgment, and should not have been entered therein, and is therefore surplusage. (*People* v. *Bonilla,* 38 Cal. 699; *People* v. *Murphy,* 45 Cal. 137; *People* v. *Dick,* 39 Cal. 102; *People* v. *Brown,* 59 Cal. 345–357.) But if the court should find that the effect of the new law is to inflict upon the defendant a greater punishment than the law annexed to the crime at the time it was committed, or alters the situation of the accused to his disadvantage to such an extent that the law is *ex post facto,* then the new law is wholly unconstitutional and void, and the old should be declared to remain in full force and effect. (See *In re Medley,* 134 U. S. 160.) If it was contemplated by the legislature that the new law was to apply to all cases, it cannot be carried out, and as the law does not have the effect intended, it should not be enforced at all. (*In re Petty,* 22 Kan. 477; *Hartung* v. *People,* 22 N. Y. 105; 26 N. Y. 167; *Marion* v. *State,* 16 Neb. 349.) The amended law of California did not, by express terms, repeal the old sections; therefore, if the new law is declared unconstitutional it is of no effect, and the old law still exists, as it has not been repealed. (*Flaherty* v. *Thomas,* 12 Allen, 428; *Garvey* v. *People,* 6 Col. 559; 45 Am. Rep. 531; *Roberts* v. *State,* 2 Over. 423; *Commonwealth* v. *Mott,* 21 Pick. 492; *Commonwealth* v. *Getchell,* 16 Pick. 452.) An *ex post facto* or unconstitutional law does not repeal a valid statute, or any statute thereby amended. When an act is void for unconstitutionality, a clause repealing all acts or parts of acts inconsistent with it repeals nothing; the former law remains unaffected. (*Campau* v. *Detroit,* 14 Mich. 276; *State* v. *La Crosse,* 11 Wis. 51; *Tims* v. *State,* 26 Ala. 165; *Shepardson* v. *Railroad,* 6 Wis. 605; *Sullivan* v. *Adams,* 3 Gray, 476; *Childs* v. *Shower,* 18 Iowa, 261; *Ely* v. *Thompson,* 3 A. K. Marsh. 70; *People* v. *Fleming,*

7 Col. 230.) An unconstitutional act is not a law, and is, in legal contemplation, as inoperative as though it had never been passed. (*Norton* v. *Selby Co.*, 118 U. S. 425; *Poindexter* v. *Greenhow*, 114 U. S. 270, 288; *Strong* v. *Daniel*, 5 Ind. 348.) An unconstitutional law can afford no justification to an officer acting under it. (*Astrom* v. *Hammond*, 3 McLean, 107; *Poindexter* v. *Greenhow*, 114 U. S. 270, 288; *Commonnealth* v. *McCombs*, 56 Pa. St. 436.) The legislature is expressly forbidden to pass any *ex post facto* law, and therefore the new law here, if *ex post facto*, is null and void, and of no effect. (Const., art. I., sec. 16; U. S. Const., art. I., secs. 9, 10.) If the law is good as to offenses committed after the new law takes effect, and not to past cases, then section 329 of the Political Code operates as a saving clause, and the defendant should be punished in accordance with the law as it stood at the time of the commission of the offense. (See Pol. Code, sec. 329.) Under a section operating as a saving clause, the repeal of a law creating a criminal offense does not bar the punishment of an act already committed in violation of the law so repealed. (*United States* v. *Barr*, 4 Saw. 254; *People* v. *Gill*, 7 Cal. 356; *People* v. *Quinn*, 18 Cal. 122. See also *People* v. *Tisdale*, 57 Cal. 104; *Jordan* v. *State*, 38 Ga. 585; *Gibson* v. *State*, 35 Ga. 224; *McCuen* v. *State*, 19 Ark. 634; *Volmer* v. *State*, 34 Ark. 487; *Acree* v. *Commonwealth*, 13 Bush, 353; *State* v. *Shaffer*, 21 Iowa, 486; *State* v. *Ross*, 49 Mo. 416.)

McFarland, J.—The appellant was convicted of murder in the first degree, and sentenced to suffer the penalty of death; and from the judgment and an order denying a new trial he appealed to this court. This court examined and considered all the points made on the appeal, determined that no error had been committed at the trial, and ordered the judgment affirmed. Afterwards, however, and before the *remittitur* went down, upon the suggestion of a difficulty caused by amendments of the law concerning the death penalty

which had been enacted by the legislature after the conviction of the appellant, the judgment of affirmance was set aside, and an argument ordered as to the effect of said amendments. The amendments, if constitutional, repealed the former law upon the subject, and contained no express saving clause by which past offenses might be punished under the law as it stood at the time of their commission. But under the authority of the recent decision of the supreme court of the United States in *Ex parte Medley*, 134 U. S. 160, the change made by said amendments in the punishment was so material as to render it, as against appellant, *ex post facto* and void, under the constitution of the United States; and as the amendments, if constitutional, repealed the former law, there seemed to be no means left by which the appellant could be punished. The main question, therefore, before the court on the first argument was, whether the amendments were not unconstitutional *in toto*, and thus inoperative as a repeal of the former law; and a majority of the court reached the conclusion, upon the views then presented, that it was so unconstitutional, and therefore left the law as it stood before the attempted repeal. The question, however, was of such importance that a majority of the court ordered a rehearing and a reargument.

The opinions of both the majority and minority of the court, on the first hearing of the question, were based upon the assumption that the amendment under review stood entirely without a saving clause, either in the amendment itself, or in the general statutory law. Since the rehearing was granted, our attention has been called, for the first time, to section 329 of the Political Code as constituting a saving clause fully covering the said amendments; and if it does constitute such a saving clause, then the question presents an entirely different aspect. In that event, the legislature could not be held as either intending the new law to apply to past offenses, or as intending to allow past offenders to escape; but construing the new law as passed with the

knowledge and in the light of the permanent saving clause existing in the general body of the law, it is clearly constitutional as to future crimes, while it leaves past offenses to be punished under the law as it was when the offenses were committed.

It is quite clear that a general saving clause, if it be clothed in apt language to express the purpose, is as efficient as a special clause expressly inserted in a particular statute. This proposition is too plain to need the support of authorities; but there *are* authorities directly to the point. (*People* v. *Quinn*, 18 Cal. 121; *United States* v. *Barr*, 4 Saw. 254; *Jordan* v. *State*, 38 Ga. 585; *Volmer* v. *State*, 34 Ark. 487; *Acree* v. *Commonwealth*, 13 Bush, 353; *State* v. *Shaffer*, 21 Iowa, 486; *State* v. *Ross*, 49 Mo. 416.)

In the statutory law of a number of the states there is a general saving clause, intended to prevent the miscarriage of justice in cases where the legislature should repeal or substantially change a penal statute, and neglect to put a special saving clause into the new enactment. Congress has enacted such a general saving clause, which is found in section 13 of the Revised Statutes; and when applying it in *United States* v. *Barr*, 4 Saw. 254, the United States district court explains the purpose and effect of such a provision as follows: "This section 13 is a salutary provision, and if it, or something like it, had always been incorporated in the statutes of the states and the United States, it would have prevented many a lame and impotent conclusion in criminal cases, in which the defendant escaped punishment because the legislature, in the hurry and confusion of amending and enacting statutes, had forgotten to insert a clause to save offenses and liabilities already committed or incurred from the effect of express or implied repeals." The said section 13, and the saving clauses in the legislation of the various states which have enacted them, are all somewhat different from each other, and from section 329 of our Political Code; but they all have the same general purpose, viz., to prevent the mischief men-

tioned by the United States district court as above quoted; and the language employed in each of them should be construed in the light of that purpose. Some examples of saving clauses in other states are as follows: In Georgia, the language employed is: "All crimes and offenses committed shall be prosecuted and punished under the laws in force at the time of the commission of such crime or offense, notwithstanding the repeal of such laws before such trial takes place." In Arkansas, the language is: "When any criminal or penal statute shall be repealed, all offenses committed or forfeitures incurred under it while it was in force shall be punished or enforced as if it were in force, notwithstanding such appeal, unless otherwise expressly provided in the repealing statute." And in Iowa, the language is: "The repeal of a statute does not revive a statute previously repealed; nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed." These examples are sufficient to show the main purpose in view, and the variety of language used to express it.

Section 329 of our Political Code is as follows: "The repeal of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so repealed, unless the intention to bar such indictment or information and punishment is expressly declared in the repealing act." Now, the impression which a first reading of this section naturally leaves upon the mind of the reader is, that it is substantially the same as the saving clauses in other states to which we have alluded; and closer inspection of the language used, and full consideration of the objections made to it by appellant, only make that first impression stronger and surer. The stress of appellant's argument is upon the words "law *creating* a criminal offense"; and the contention is, that a law repealing the punishment of an offense is not to be brought within the meaning of a law

repealing a law "creating" an offense. (We do not deem it necessary to here quote in full the old and the new law upon which the question under discussion arises. It is sufficient to say that when appellant committed the crime of which he was convicted certain sections of the Penal Code provided for the death penalty; and that afterwards, on March 31, 1891, the legislature passed an act by which it amended and re-enacted those sections, and in the sections thus re-enacted provided for what is admitted to be a different and more severe punishment. The sections of the Penal Code which define murder were not changed. The most important sections of the Penal Code thus changed are sections 1217, 1227, and 1229; and the act changing them is to be found commencing on page 272 of the statutes of 1891. The act contained no expression of intent to bar an indictment or information for a past offense, or the punishment thereof.)

The contention of appellant rests upon the position that the description or definition of acts necessary to constitute a crime creates the crime, and that unless the definition in a law creating a crime is repealed, there is no repeal of such law within the meaning of the Political Code. But that position cannot be maintained. A description of acts necessary to constitute a crime does not make the commission of such acts a crime; punishment is as necessary to constitute a crime as definition. Without either, there is no crime; and the repeal of either leaves no crime. What constitutes a crime is definitely stated in section 15 of the Penal Code as follows: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, *and to which is annexed,* upon conviction, either of the following *punishments:* 1. Death; 2. Imprisonment; 3. Fine; 4. Removal from office; or 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this state." And so we think that a close analysis of section 326 removes all the refined distinctions by which its apparent general purpose is sought to be thwarted.

The case of *State* v. *Shaffer*, 21 Iowa, 486, is very much like the case at bar. In that case, section 4324 of the Criminal Law of Iowa had been amended, after the commission of the crime charged against the defendant, so as to merely change the punishment, and it was contended that the amendment took away the jurisdiction of the court in which he was tried. But the court, after citing section 29, which contained the general saving clause (heretofore quoted in this opinion), says: " The amendment to section 4324 is to be construed in connection with this section, and with such section it is equivalent to adding to such amendment, 'provided that such amendment shall not affect any penalty incurred under the section aforesaid.' This subdivision of section 29 of the revision was not presented by counsel, and hence not passed upon by the court, in the case of *State* v. *Burdick*, 9 Iowa, 402." In *People* v. *Tisdale*, 57 Cal. 104, there is some discussion of section 329 of the Political Code; but at the time of the commission of the crime there charged, the defendant could have been proceeded against by indictment only, and not by information; and at the time of the decision, section 329 did not contain the word "information." But the defendants were prosecuted by information under a subsequent law; and the court held that section 329 could not be applied, because there was no power to inject into it the word "information," saying: "We do not think that the respondents in this case could be held to answer for the offense with which they are charged, 'unless on presentment of a grand jury.'" This is all that was decided; and it does not touch the point involved in the case at bar. It seems clear enough that the section, at least as it then stood, could not be applied to the attempted prosecution by information of a crime which, at the time of its commission, could be prosecuted only by indictment; but the extent to which the court discusses the question there involved shows that it must have considered section 329 as of wide-reaching influence. There are no other decisions in this state to which our attention has

been called that throw further light upon the question.

It is quite clear that the act of March 31, 1891, repealed all contained in the sections amended that is not contained in the said sections as re-enacted, and thus repealed the former punishment. Indeed, counsel for appellant not only admit this proposition, but they declare it as the very basis of their contention, that there is now no law by which their client can be punished. They say in their brief: "That these amendments *absolutely* and *completely* wiped out the old sections of the Penal Code there can be no question." And this is clearly so. The language of the act, as to each section, is, that the section "is hereby amended so as to read as follows"; and of course everything not put into the section as re-enacted vanished. The effect of such a re-enactment is well stated in the opinion of the court in *State* v. *Ingersoll*, 17 Wis. 634. It was there contended that a certain section 5 of chapter 35 of the Revised Statutes had not been repealed; but the court say: "We are satisfied, however, that this is a mistake, and that that section had been repealed by chapter 147, above referred to. For that chapter provides that 'section 5, chapter 35, of the Revised Statutes, entitled "Of Excise," is hereby amended *so as to read as follows*,' etc. Now, the conclusion is irresistible that any provision of section 5 not found in this chapter is repealed. This must be so, since the legislature says expressly that that section shall thereafter read and be to the effect following; then going on to enact a complete substitute for the former provision. In what clearer manner could the legislature indicate its intention to supersede, change, and repeal section 5 than by the one adopted? It is amended so as to read and be to the effect therein prescribed, and quite different from what it was as it formerly existed. An examination of our statutes will show that this method of superseding and changing the existing law is frequently resorted to, and it certainly leaves no room to doubt as to what the legislature intended. The legislature, in effect, says that such a pro-

vision of law shall be read and construed to be as therein
declared, and shall have no other meaning or effect given
to it. (See *State* v. *Andrews*, 20 Tex. 230.) Section 5,
therefore, being superseded, changed, and repealed by
chapter 147, was not in force when the trial was had in
this case, and furnished no authority to the court to give
judgment upon it. It can no more be said to exist for
the purpose of regulating the punishment applicable
to the offense here complained of than one committed
since the law of 1862 went into operation." (See also,
on this point, *United States* v. *Barr*, 4 Saw. 254.) And
of course the materiality of the difference between the
punishment prescribed by the old sections, and the pun-
ishment prescribed by them as re-enacted, is admitted
by appellant; for upon that materiality depends his
whole contention that the re-enactments are as to him
*ex post facto.*

Our conclusion is, that under section 329 of the Politi-
cal Code the appellant is to be punished under the law
as it existed at the time of the commision of the crime
of which he was convicted; and that, under this view, the
said act of March 31, 1891, is constitutional, because not
intended to apply to past offenses, but to be prospective
only, in its operation.

The judgment and order appealed from are affirmed,
and the superior court is directed to take further pro-
ceedings in accordance with this opinion.

PATERSON, J., SHARPSTEIN, J., GAROUTTE, J., and
BEATTY, C. J., concurred.

HARRISON, J., and DE HAVEN, J., dissented.

The following is the opinion above referred to, ren-
dered in Department One on the 1st of May, 1891:—

FOOTE, C. — The defendant, McNulty, was charged by
information with the murder of "one James Collins."
He was convicted as charged, and prosecutes this appeal
from the judgment rendered against him, and from an
order denying a new trial. "The defense set up at the

trial was insanity. The bill of exceptions is the charge of the court." The grounds of error alleged are, that the court in its instructions charged the jury that the defendant must establish the fact of insanity, after proof of the alleged killing, by a preponderance of evidence; his contention, in brief, being, that sanity is a necessary ingredient in the guilt of one charged with murder; that such guilt must be proved beyond any reasonable doubt; and hence, if the evidence discloses a reasonable doubt as to whether a defendant is sane, he must be acquitted. The question, which is exhaustively presented, and the authorities fully stated and discussed, has recently been settled by an opinion of the appellate court of this state in *People* v. *Travers*, 88 Cal. 233, which, as to the matter in hand, reads thus: "3. In the instructions given upon the subject of insanity, there was no error prejudicial to appellant. They are somewhat voluminous; but the main proposition contained in them was, that a person is presumed to be sane until the contrary is shown, and that the burden is on a defendant of showing insanity, by a preponderance of evidence. This rule has been established in this state by a long line of authorities. (*People* v. *Myers*, 20 Cal. 518; *People* v. *Coffman*, 24 Cal. 237; *People* v. *McDonnell*, 47 Cal. 134; *People* v. *Wilson*, 49 Cal. 13; *People* v. *Messersmith*, 61 Cal. 246; *People* v. *Hamilton*, 62 Cal. 377; *People* v. *Kernaghan*, 72 Cal. 609; *People* v. *Eubanks*, 86 Cal. 295.) And this long line of decisions cannot be held to have been overruled by *People* v. *Bushton*, 80 Cal. 160, where the defense was accident, and *People* v. *Elliott*, 80 Cal. 296, where the defense was self-defense. In those cases the court was dealing entirely with those 'circumstances' referred to in section 1105 of the Penal Code which mitigate or justify or excuse an act done by a sane man who might commit a crime; and its attention was not called in any way to that unusual and peculiar mental condition called 'insanity' which renders a man utterly incapable of committing crime at all. In the opinion of the court in *People* v. *Bushton*, 80 Cal. 160, reference is made to *Peo-*

*ple* v. *Smith,* 59 Cal. 607, and *People* v. *Flanagan,* 60 Cal.
3, 44 Am. Rep. 52, in which the very doctrine of the
Bushton case was stated; but in those cases — where the
defenses were self-defense and defense of property —
the court certainly did not intend to overthrow the set-
tled rule of the court on the subject of insanity. We
are clear, therefore, that the undisturbed law of this
state still is, that the burden of showing insanity is upon
a defendant who seeks shelter under it as a defense."
This disposes of all the points made by counsel for the
defendant.

An attorney permitted to file a brief as *amicus curiæ*
has raised certain points as to the minutes of the court
not showing that certain things were done which are re-
quired by law, and that the judgment was insufficient as
not showing that the defendant had been convicted of
murder in the first degree, although it does state that
the sentence was " for the murder of James Collins on
the twenty-fifth day of March, 1888, of which you have
been duly convicted." The judgment was sufficient, as
stating the general offense " murder" for which the de-
fendant was convicted. (*Ex parte Murray,* 43 Cal. 455;
*Ex parte Simpson,* 47 Cal. 127.) It appears that, upon a
suggestion of the diminution of the record, there was
filed here a certified copy of the minutes of the trial
court, containing, among other things, an amendment of
the minutes *nunc pro tunc* as to the fact that when the
defendant appeared for judgment, he was asked " if he
had any legal cause to show why judgment should not
be pronounced against him." This amendment could
be made by the trial court so as to conform to the true
state of facts, even pending appeal. (*People* v. *Murback,*
64 Cal. 372.)

As to all other matters which it is complained were
not done, — even if it be conceded, without deciding,
that as the record originally appeared it affirmatively
showed that they were not done, — the certified copy of
the minutes of the proceedings show that none of the
points made as to the sufficiency of the minutes are well-

taken; that everything was done which the statute required to save all the rights of the defendant when called up for sentence and judgment.

He also urges an objection to the sufficiency of the information, in respect that it does not designate a human being as having been murdered by defendant, in the allegation that the defendant " did then and there willfully, unlawfully, feloniously, and of his malice aforethought, kill and murder one James Collins "; the argument being that " one James Collins " might mean a horse as well as a person or human being. It is manifest that the defendant could not have been otherwise than informed by the language used that he was accused of the murder of a human being, when he was charged with having murdered " one James Collins." This is all that the law requires. (Pen. Code, sec. 959, subd. 6; *People* v. *Freeland*, 6 Cal. 98.) We therefore advise that the judgment and order be affirmed.

VANCLIEF, C., and BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.