[Crim. No. 19292. In Bank. Nov. 10, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
SHEILA ISABELLE ROSSI, Defendant and Appellant.

**COUNSEL**

Fleishman, McDaniel, Brown & Weston and Stanley Fleishman for Defendant and Appellant.

Roland & Wright, Thomas V. Roland, Alton L. Wright II, Fred Okrand, John D. O'Loughlin, Jill Jakes, Daniel C. Lavery and Mark Rosenbaum as Amici Curiae on behalf of Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**TOBRINER, J.**—Defendant appeals from a judgment of conviction entered after a nonjury trial in which the court found her guilty of five counts charging violation of section 288a of the Penal Code. Defendant contends that her conviction should be reversed because, before the conviction became final, the Legislature amended section 288a of the Penal Code so as to legalize her conduct. We conclude that in light of the intervening amendment the conviction must be reversed.

The relevant facts are undisputed. Defendant, a part-time instructor in psychology at UCLA, is a married woman with two children. During the filming of several low-budget movies, she committed several sexual acts which constituted violations of former section 288a.[1] After the trial court rendered its judgment of conviction, it suspended proceedings and placed defendant on probation for three years. Defendant has appealed.

At the time defendant committed the charged acts, Penal Code section 288a broadly proscribed all oral copulation, even between consenting adults.[2] On January 1, 1976, after the rendition of judgment but before its finality by the lapse of the period for appeal, amended section 288a took effect. (Stats. 1975, ch. 71, § 10, p. 134; Stats. 1975, ch. 877, § 2, p. 1958.) The People concede that the acts which defendant committed are not criminal under section 288a as amended.[3]

At common law, a statute mitigating punishment applied to acts committed before its effective date as long as no final judgment had been rendered. (See *People* v. *Hayes* (1894) 140 N.Y. 484 [35 N.E. 951].) Similarly, when a statute proscribing certain designated acts was repealed without a saving clause, all prosecutions for such act that had not been reduced to final judgment were barred. (*United States* v.

---

[1] The People adduced no evidence that defendant received compensation for her roles in these films. One of the films bore a commercial logo and a suggestive title, and some of the films were apparently unsuccessfully offered for sale.

[2] Prior to January 1, 1976, section 288a read in pertinent part: "Any person's parcticipating in an act of copulating the mouth of one person with the sexual organ of another is punishable by imprisonment in the state prison for not exceeding 15 years, or by imprisonment in the county jail not to exceed one year. . . ."

[3] As amended, section 288a proscribes acts of oral copulation only when affected by force, committed while confined in a state prison, or committed with a minor. (See fn. 8, *post.*)

*Schooner Peggy* (1801) 5 U.S. (1 Cranch) 103, 110 [2 L.Ed. 49, 51] (Marshall, C. J.).) Until a decade ago, however, a line of California cases—primarily Court of Appeal decisions—had interpreted the general saving clause embodied in Government Code section 9608[4] and its predecessors as completely abrogating these common law rules.[5]

In *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], this court undertook an extensive review of this entire line of authority and concluded that the earlier cases had improperly extended the application of Government Code section 9608 far beyond its intended scope. In *Estrada* we observed that at common law when a statute was passed that *increased* the punishment for a crime, a defendant who committed the proscribed acts prior to the effective date of the new law could not be punished under the old law because it no longer existed, and he could not be punished under the new law because its attempted application would render it an ex post facto law. (See *Sekt* v. *Justice's Court* (1945) 26 Cal.2d 297 [159 P.2d 17, 167 A.L.R. 833].)

Section 9608, we explained in *Estrada,* was enacted simply to authorize prosecutions under the former statute in order to avoid this technically absurd result by which a defendant could be prosecuted under no law, simply because the Legislature had decided to *increase* the punishment for his crime. (See *People* v. *McNulty* (1892) 93 Cal. 427, 437 [26 P. 597, 29 P. 61].) We concluded, however, that the provision was not intended to abrogate the well-established common law rule which, in the absence of clear legislative intent to the contrary, accorded a criminal defendant the benefit of a mitigation of punishment adopted before his criminal conviction became final. Thus, we held that "[w]here the amendatory statute mitigates punishment and there is no saving clause,

[4]Section 9608 provides in full: "The termination or suspension (by whatsoever means effected) of any law creating a criminal offense does not constitute a bar to the indictment or information and punishment of an act already committed in violation of the law so terminated or suspended, unless the intention to bar such indictment or information and punishment is expressly declared by an applicable provision of law."

[5]See *People* v. *Harmon* (1960) 54 Cal.2d 9 [4 Cal.Rptr. 161, 351 P.2d 329]; *People* v. *Fowler* (1959) 175 Cal.App.2d 808, 812 [346 P.2d 792]; *In re Crane* (1935) 4 Cal.App.2d 265 [41 P.2d 179]; *People* v. *King* (1934) 136 Cal.App. 717 [29 P.2d 870]; *People* v. *Lindsay* (1925) 75 Cal.App. 115, 121 [242 P. 87]; *People* v. *Pratt* (1924) 67 Cal.App. 606, 608 [228 P. 47]; *People* v. *Davis* (1924) 67 Cal.App. 210, 215 [227 P. 494]; *People* v. *Williams* (1914) 24 Cal.App. 646 [142 P. 124].

the rule is that the amendment will operate retroactively so that the lighter punishment is imposed." (63 Cal.2d at p. 748.)[6]

The *Estrada* court's conclusion as to the limited reach of Government Code section 9608 finds direct support in a line of United States Supreme Court decisions construing the comparable language of the general federal "saving" provision. (1 U.S.C. § 109.)[7] In *Hamm* v. *Rock Hill* (1964) 379 U.S. 306 [13 L.Ed.2d 300, 85 S.Ct. 384], for example, the Supreme Court concluded that, notwithstanding the general saving provision, the Civil Rights Act of 1964, by removing criminal sanctions for "sit-in" demonstrations in public accommodations, would mandate the abatement of any federal trespass conviction rendered, but not finalized, prior to the passage of the Civil Rights Act. As the *Hamm* court explained: "The federal saving statute was originally enacted in 1871, 16 Stat. 432. *It was meant to obviate mere technical abatement* such as that illustrated by the application of the rule in *Tynen* [*United States* v. *Tynen* (1871) 78 U.S. (11 Wall.) 88, 95 (20 L.Ed. 153, 155)] decided in 1871. There a substitution of a new statute with a greater schedule of penalties was held to abate the previous prosecution. In contrast, the Civil Rights Act works no such technical abatement. It substitutes a right for a crime. So drastic a change is well beyond the narrow language of amendment and repeal [of the federal saving statute]. It is clear, therefore, that if the convictions were under a federal statute they would be abated." (Italics added.) (379 U.S. at p. 314 [13 L.Ed.2d at p. 306]. See also *United States* v. *Chambers* (1934) 291 U.S. 217, 224 [78 L.Ed. 763, 766, 54 S.Ct. 434, 89 A.L.R. 1510].) *Estrada* teaches that section 9608 must properly be accorded a similar limited scope, and thus is inapplicable in the instant case.

The People contend, however, that the case at bar is distinguishable from *Estrada,* pointing out that in the instant case the intervening

---

[6]*Estrada* explained the rationale for the rule in the following terms: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (63 Cal.2d at p. 745).

[7]The federal provision reads in relevant part: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

amendment has entirely eliminated any criminal sanction for defendant's acts while in *Estrada* the intervening amendment merely reduced the punishment for the conduct. Although it is true that *Estrada* and recent California cases applying *Estrada* have involved intervening enactments which merely reduced, rather than entirely eliminated, penal sanctions (see, e.g., *People* v. *Francis* (1969) 71 Cal.2d 66 [75 Cal.Rptr. 199, 450 P.2d 591]; *In re Fink* (1967) 67 Cal.2d 692, 693 [63 Cal.Rptr. 369, 433 P.2d 161]; *In re Ring* (1966) 64 Cal.2d 450, 452 [50 Cal.Rptr. 530, 413 P.2d 130]), numerous precedents demonstrate that the common law principles reiterated in *Estrada* apply a fortiorari when criminal sanctions have been completely. repealed before a criminal conviction becomes final.

In *Spears* v. *County of Modoc* (1894) 101 Cal. 303 [35 P. 869], for example, defendant was convicted in justice court of violating a local penal ordinance prohibiting "the keeping of a saloon where spiritous liquors were sold" and was fined $500. Pending his appeal to the superior court, the local ordinance was repealed but the superior court nonetheless affirmed the conviction. In subsequent proceedings, this court determined that the superior court had been in error and explicitly held that the repeal of the ordinance before the judgment became final invalidated the conviction.

Citing numerous respected authorities, the *Spears* court explained its conclusion at some length: "[T]he effect of repealing a statute is 'to obliterate it as completely from the records of the parliament as if it had never passed; and it must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted and concluded while it was an existing law.' This principle has been applied more frequently to penal statutes, and it may be regarded as an established rule that the repeal of a penal statute without any saving clause has the effect to deprive the court in which any prosecution under the statute is pending of all power to proceed further in the matter. 'The repeal of a statute puts an end to all prosecutions under the statute repealed, and to all proceedings growing out of it pending at the time of the repeal.' (Sedgwick's Statutory and Constitutional Law, 130. . . .) 'If a penal statute is repealed pending an appeal, and before the final action of an appellate court, it will prevent an affirmance of a conviction, and the prosecution must be dismissed, or judgment reversed.' (Sutherland on Statutory Construction, sec. 166.)" (101 Cal. at p. 305.)

The opinion specifies when this general principle applies. "The proceeding is arrested at the very point where it is at the date of the repeal; if before indictment no indictment can be found; if after the indictment, and before trial, no conviction can be had; if after conviction and before judgment, no judgment can be rendered. If the judgment is appealed from and its enforcement is suspended until the determination of the appeal, the power to enforce the judgment falls with the repeal of the statute, and the appellate court will direct a dismissal of the proceedings. Until the determination of the appeal, the proceeding is pending in court, and the judgment does not become final until affirmed by the appellate court. If, during the interim, the Legislature repeals the statute under which the prosecution is had, it operates as a discharge of the defendant. 'The repeal of the law imposing the penalty is of itself a remission.' (Per Taney, C. J., *State* v. *R.R. Co.,* 3 How. 552.)" (101 Cal. at pp. 305-306.) (See, e.g., *Sekt* v. *Justice's Court, supra,* 26 Cal.2d 297, 304-308 [159 P.2d 17, 167 A.L.R. 833]; *Yeaton* v. *United States* (1809) 9 U.S. (5 Cranch) 281, 283 [3 L.Ed. 101, 102]; *United States* v. *Tynen, supra,* 78 U.S. (11 Wall.) 88, 95; *United States* v. *Chambers, supra,* 291 U.S. 217, 222-223 [78 L.Ed. 763, 765-766]; *Hamm* v. *Rock Hill, supra,* 379 U.S. 306, 312-313 [13 L.Ed.2d 300, 305-306].)

In light of these numerous authorities, it is clear that the People can gain no comfort from the fact that the intervening amendment of section 288a *completely repealed* the provisions under which defendant was convicted instead of simply mitigating the punishment for defendant's conduct.[8] Indeed, in *Estrada* itself we noted that "[i]t is the rule at common law and in this state that when the old law in effect when the act is committed is repealed, and there is no saving clause, all prosecutions not reduced to final judgment are barred." (63 Cal.2d at p. 747.)

 The People alternatively claim that, assuming the governing common law rules call for a reversal of defendant's conviction in the

---

[8]A contrary reading of *Estrada* which confined its holding to amendments which mitigated punishment and excluded amendments which repealed all criminal sanction would clearly lead to absurd results. Under the dissent's interpretation, if the Legislature had simply amended section 288a to reduce the maximum punishment to one day in jail defendant would be accorded the benefit of that mitigation; since the Legislature completely repealed all criminal penalties for a violation of former section 288a, however, the dissent would find a Legislative intent that defendant be subjected to the full punishment prescribed by the repealed legislation. With all respect, such a reading of legislative intent belies reality.

absence of a contrary legislative directive, the legislation amending section 288a does evidence a legislative intent to depart from the common law rule and to retain the prior criminal sanctions with respect to defendants whose convictions had not become final at the time of the repeal. Although the Legislature retains the constitutional authority to preserve criminal sanctions for acts committed prior to repeal, we can find nothing in the amending legislation to suggest that the Legislature intended such a result here.

■ The People concede that the portions of the recent legislation relating to the amendment of Penal Code section 288a give no indication that the Legislature intended to alter the established common law rules,[9] but they argue that the Legislature's intent to depart from such rules can be gleaned from an entirely separate section of the amending legislation, which added a new provision to the *Education Code.* (See Stats. 1975, ch. 71, § 1, p. 131-132.) A number of provisions of the Education Code restrict or negate the eligibility of those convicted of "sex offenses" to serve as teachers or other school employees (see, e.g., Ed. Code, §§ 13175, 13207, 13220.16, 13218, 13255, 13586), and, under the terms of Education Code section 12912, former section 288a constituted one such "sex offense." The provision of the recent legislation upon which the People now rely simply added a new subdivision (subd. (g)) to section 12912, specifying that the definition of "sex offense" includes "[a]ny offense defined in section 286 or 288a of the Penal Code prior to the effective date of the amendment of either section enacted at the 1975-76 Regular Session of the Legislature committed prior to the effective date of the amendment."

---

[9]The relevant portion of the recent bill reads in full: "Section 288a of the Penal Code is amended to read: (a) Oral copulation is the act of copulating the mouth of one person with the sexual organ of another person. (b) Any person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison for a period of not more than 15 years or in a county jail for a period of not more than one year. (c) Any person who participates in an act of oral copulation with another person who is under 14 years of age and more than 10 years younger than he, or who has compelled the participation of another person in an act of oral copulation by force, violence, duress, menace, or threat of great bodily harm, shall be punished by imprisonment in the state prison for a period not less than three years. (d) Any person who, while voluntarily acting in concert with another person, either personally or by aiding and abetting such other person, commits an act of oral copulation by force or violence and against the will of the victim shall be punished by imprisonment in the state prison for a period of five years to life. (e) Any person who participates in an act of oral copulation while confined in any state prison, as defined in Section 4504 or in any local detention facility as defined in Section 6031.4, shall be punished by imprisonment in the state prison for a period of not more than five years, or in a county jail for a period of not more than one year."

Although the People maintain that this provision demonstrates a legislative intent to alter the established common law rule relating to abatement of criminal convictions, we believe the People have simply misconceived the effect of the Education Code amendment in question. The amendment does not purport to establish whether or not pending criminal prosecutions shall abate or not, but simply specifies that all individuals who have in fact been convicted of "offenses"—i.e., who have suffered final judgments of convictions—under the prior Penal Code provisions, shall continue to be treated as falling within the purview of section 12912. Thus, the amendment at issue merely evidences a legislative determination that individuals whose convictions under former section 286 and 288a *have become final,* and who may have been dismissed from employment on that basis years ago, are not presently entitled to reinstatement even though the former criminal sanctions have now been repealed. (Cf. *Monroe* v. *Trustees of the California State Colleges* (1971) 6 Cal.3d 399 [99 Cal.Rptr. 129, 491 P.2d 1105].) Accordingly, the amendment to Education Code section 12912 affords no basis for upholding defendant's current conviction.

██ As the United States Supreme Court has observed, it is "the universal common-law rule that when the legislature repeals a criminal statute or otherwise removes the State's condemnation from conduct that was formerly deemed criminal, this action requires the dismissal of a pending criminal proceeding charging such conduct. The rule applies to any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it." (*Bell* v. *Maryland* (1964) 378 U.S. 226, 230 [12 L.Ed.2d 822, 826, 84 S.Ct. 1814].) In the instant case, this "universal common-law rule" mandates the reversal of defendant's conviction.

The judgment is reversed.

Wright, C. J., Mosk, J., and Sullivan, J., concurred.

**RICHARDSON, J.**—I concur in the judgment under the compulsion of *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948].

**CLARK, J.**—The question presented by this appeal is whether our general saving statute (Gov. Code, § 9608) is applicable when the statute under which the defendant was convicted is, in effect, repealed before judgment becomes final. The majority, relying on *In re Estrada* (1965) 63

Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], hold section 9608 inapplicable. I dissent. *Estrada,* properly understood, does not support their conclusion. To the contrary, when Justice Peters' majority opinion in *Estrada* is read in light of his concurring and dissenting opinion in *People v. Harmon* (1960) 54 Cal.2d 9, 27-33 [4 Cal.Rptr. 161, 351 P.2d 329], it becomes clear that *Estrada* supports the opposite conclusion.

The fundamental premise of Justice Peters' argument, which was unsuccessful in *Harmon* but prevailed in *Estrada,* is that section 9608 "tells us that the Legislature intended that the offender be punished, but it offers no clue as to what statute shall be applied." (*Harmon,* at p. 30.) Permitting defendant to entirely escape punishment for her offense is, of course, inconsistent with this premise.

In *Harmon,* Justice Peters distinguished three types of cases: (1) The statute under which the defendant was convicted is *repealed* pending appeal. (2) The statute under which the defendant was convicted is amended, pending appeal, by *increasing* the punishment. (3) The statute under which the defendant was convicted is amended, pending appeal, by *decreasing* the punishment. Justice Peters' ultimate conclusion in *Harmon,* as well as *Estrada,* is that the considerations leading to the application of section 9608 in case (2) do not compel its application in case (3). However, in the course of reaching this conclusion, Justice Peters expressly affirmed that section 9608 applies to case (1), i.e., this case.

Case (2) is unlike case (3) in this respect: the constitutional prohibition against ex post facto laws prevents application of an amended statute increasing punishment to crimes already committed, but does not prevent application to such crimes of an amended statute decreasing punishment. Therefore, Justice Peters concluded, the Legislature's intent, expressed in section 9608, that the offender be punished can only be given effect in case (2) under the old law whereas in case (3) it can be given effect under the new law as well.

"In both situations, that is, where the amendment increases or decreases the punishment, we are required to ascertain the legislative intent. The saving clause tells us that the Legislature intended that the offender be punished, but it offers no clue as to what statute shall be applied. Where the amended statute increases the punishment the amended statute cannot constitutionally be applied to the punishment of

crimes already committed, because of the constitutional inhibition against *ex post facto* laws. Therefore, it is obvious that the saving clause must be interpreted as disclosing an intent that the offender shall be punished under the old law because that is the only law, constitutionally, under which he can be punished. In such a situation the saving clause is the conclusive factor. But that is not so where the amendment mitigates the punishment. In such a situation the offender, constitutionally, can be punished under either the old or the amended law. Now the saving clause is of no help at all. It simply tells us that the Legislature intended that the offender should be punished, but it gives no indication at all as to which statute shall apply." (*Harmon* at pp. 30-31.)

Case (1) is like case (2) in this respect: there is no question as to which law the Legislature intended the offender to be punished under. The prohibition against ex post facto laws eliminates the new law from consideration when an amendment increases the punishment. When a statute is repealed there is no new law to enter into consideration. In both cases, therefore, the Legislature's intent that the offender be punished, expressed in section 9608, can only be given effect under the old law. "In both of the situations . . . , if there is a saving clause, the offender may be punished under the old law. This is so because the saving clause has expressed an intent that, even though the old statute has been repealed or amended, the offender is to be punished, and since the only law under which he can be punished is the old law, he is to be punished under that law." (*Harmon* at p. 28.)

Justice Peters reaffirmed this principle in *Estrada*. "A reading of [section 9608] demonstrates that the Legislature . . . positively expressed its intent that an offender of a law that has been repealed or amended should be punished . . . ." (63 Cal.2d at pp. 747-748.) Reversing defendant's conviction, therefore, is inconsistent with *Estrada*.

The majority profess to find support for their thesis—that general saving statutes such as 9608 are intended to apply only to instances of "technical abatement," i.e., amendment of a statute to increase the punishment—in *Hamm* v. *Rock Hill* (1964) 379 U.S. 306 [13 L.Ed.2d 300, 85 S.Ct. 384]. In relying on *Hamm*, the majority lean on a slender reed. The high court there interpreted the federal saving statute in light of its understanding of Congress' intent in enacting that particular statute. The court could not, and did not purport to, render an opinion as to what other legislatures must have intended in enacting their own saving

statutes. Certainly nothing in *Hamm* gives us reason to overrule *Estrada* by interpreting section 9608 contrary to its plain meaning. Moreover, the consensus of the commentators is that the high court misinterpreted the federal saving statute in a transparent attempt to avoid the constitutional question presented by *Hamm.* (See, e.g., Note, *Constitutional Law: Supreme Court Avoids Constitutional Question of State Action in Sit-In Cases by Extending the Doctrine of Abatement,* 1965 Duke L.J. 640, 645-648; Note, *Constitutional Law—Statutory Construction—Application of the Principle of Abatement To Avoid the Constitutional Question* (1965) 50 Iowa L.Rev. 1254; Note, *Constitutional Law—Civil Rights Act of 1964 Prevents Convictions for Peaceful Sit-Ins and Abates All Such Convictions That Are Subject to Direct Review at the Time of Its Passage* (1965) 43 Texas L.Rev. 964, 967; Note, *Constitutional Law—Abatement of Convictions Occurring Prior to Passage of Civil Rights Act of 1964* (1965) 18 Vand. L.Rev. 1574, 1579.)

Defendant's conviction should be affirmed.

McComb, J., concurred.