Filed 10/15/15  P. v. Peterson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARC ALAN PETERSON,<br><br>Defendant and Appellant. | F068924<br><br>(Super. Ct. No. 13CM2191)<br><br>**OPINION** |

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Kane, Acting P.J., Franson, J. and Smith, J.

A jury convicted appellant Marc Alan Peterson on one count each of transportation of methamphetamine (count 1/Health & Saf. Code, § 11379, subd (a)), possession of methamphetamine (count 12/Health & Saf. Code, § 11377, subd. (a)), and possession of drug paraphernalia (count 13/former Health & Saf. Code, § 11364.1), three counts each of driving under the influence of methamphetamine (counts 2, 8, & 10/Veh. Code, § 23152, subd. (a)), and being under the influence of methamphetamine (counts 4, 9, & 11/Health & Saf. Code, § 11550, subd. (a)), and two counts of misdemeanor failing to appear (counts 5 & 6/Pen. Code, § 853.7). The jury also found true an on-bail enhancement in count 12. In a separate proceeding, Peterson admitted two prior prison term enhancements (Pen. Code, § 667.5, subd. (b)) and a prior conviction enhancement (Health & Saf. Code, § 11370.2, subd. (c)).

On January 21, 2014, the court struck the prior conviction enhancement and sentenced Peterson to an aggregate term of seven years eight months in local custody: the middle term of three years on Peterson's transportation of methamphetamine conviction, an eight-month term on his possession of methamphetamine conviction, a two-year on-bail enhancement, two one-year prior prison term enhancements, and time served on the remaining counts.

On appeal, Peterson contends the court abused its discretion when it denied his motion for a mistrial and that he was denied the effective assistance of counsel. Respondent contends that a change in the law requires reversal of Peterson's conviction for transportation of methamphetamine and remand for further proceedings.[1] We find

---

[1] In arguing that he was denied the effective assistance of counsel, Peterson baldly asserts that the deficient representation he received also requires a new trial on his conviction for possession of methamphetamine conviction in count 12. Peterson waived this issue by his failure to provide legal argument or authority in support of this contention. (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363-364.)

2.

merit to respondent's contention and remand for further proceeding on this count. In all other respects we affirm.

## **FACTS[2]**

### *Counts 10 and 11*

On July 12, 2008, California Highway Patrol Officer Fred Fonseca stopped a vehicle driven by Peterson for several traffic violations. Peterson's eyes were bloodshot, his speech was slow and thick, and his movements were slow and deliberate. Officer Fonseca arrested Peterson after he performed poorly on field sobriety tests. Peterson admitted using methamphetamine earlier that day. A urine test disclosed that he had 242 milligrams per liter of methamphetamine, which was a level in his urine that indicated that the methamphetamine in his system was high enough to impair his ability to operate a motor vehicle safely.

### *Counts 8 and 9*

On February 3, 2012, at approximately 1:30 p.m., Peterson drove up in a car to a residence in Lemoore where members of the Kings County Narcotics Task Force were conducting a probation search. Peterson's eyes were bloodshot and he was licking his lips, which were covered with a white pasty substance. Peterson performed poorly on field sobriety tests and was arrested. A blood sample from Peterson disclosed that he had .86 milligrams of methamphetamine per liter, which indicated that the level of methamphetamine in his system was high enough to impair his ability to drive safely.[3]

---

**2** Peterson's trial in this matter was held over several days beginning December 16, 2013. The facts are based on the evidence presented by the prosecution at trial. The defense did not present any evidence.

**3** The prosecution's expert testified that methamphetamine levels in urine samples are much higher than methamphetamine levels in blood samples because the blood disperses throughout the body, whereas methamphetamine gets concentrated in the urine because the urine is contained in a small area of the body, i.e., the bladder.

3.

*Counts 1 Through 4*

On January 14, 2013, at approximately 11:00 p.m., Kings County Sheriff's Deputy Taylor Lopes was on patrol on 17th Avenue in Kings County when he noticed a vehicle in front of him swerve and cross the center dividing line. Deputy Lopes activated his emergency lights and the car travelled for approximately 300 yards before stopping. When the vehicle stopped, Deputy Lopes found Peterson seated in the driver's seat and Deanna Blankenship seated in the front passenger's seat.

Deputy Lopes noticed that Peterson appeared to be under the influence of a controlled substance: he was nervous and fidgety, he would scratch his face and grind his teeth, and he had a hard time sitting still and following the deputy's instructions. Deputy Lopes also smelled an odor of marijuana coming from the car and he had Peterson step out. Deputy Lopes asked Peterson if he had used any type of controlled substance and Peterson stated that he had smoked marijuana earlier but he felt that he could drive safely. Lopes arrested Peterson after Peterson failed several field sobriety tests.

Deputy Lopes searched the car. Near the center console, in plain view between the driver's seat and the front passenger's seat, he found a black film canister containing two baggies that each contained a green leafy substance that Lopes believed was marijuana. Deputy Lopes also found four white pills of oxycodone on the center console near the film canister, four additional pills on the floorboard in front of the front passenger's seat, and 45 pills in a purse in the car.

After arresting Blankenship, Deputy Lopes told her that he believed she had something illegal on her person and that if she took it into the jail she would be charged with taking an illegal substance into the jail. Blankenship began to cry and told Deputy Lopes that she had a baggie of methamphetamine and a glass pipe in her pants. She also stated that when the deputy was behind them and activated his lights, Peterson removed the baggie of methamphetamine and a glass pipe from his jacket and stuffed them in Blankenship's pants. Blankenship did not want to carry these items because she did not

4.

want to be arrested, but Peterson insisted she carry them because he believed male deputies would not be able to find them. Blankenship also told Deputy Lopes that the transfer of these items to Blankenship was the reason Peterson took so long to pull over. Blankenship then removed a baggie containing 2 grams of methamphetamine and a clear glass pipe from her underwear and handed them to Deputy Lopes.

At the police station, Peterson provided a urine sample that tested positive for methamphetamine and THC.[4]

### Counts 12 and 13

On June 7, 2013, officers conducted a probation search of the residence where Peterson lived with his mother. On top of a workbench in the garage, in plain view, Officer Jeremy Ricks found a glass smoking pipe that contained white residue and a chunk of methamphetamine with a net weight of .2 grams.

Peterson told Officer Matthew Smith that although he slept in the house, he spent most of his time in a shed in the backyard. Peterson admitted owning the pipe, being a longtime methamphetamine user who typically used every morning, and that he had last used methamphetamine late the previous night. He also told Officer Smith that he was going to use the methamphetamine found in the pipe later that day.

### Counts 5, 6, and 7

During the trial the prosecution introduced records showing that Peterson failed to appear in court on May 26, 2009, March 16, 2012, and August 20, 2012.

### The Testimonies of Officers Williams and Smith

Officer Dale Williams testified about the probation search that was conducted on February 3, 2012, at the house in Lemoore during which Peterson drove up and was

---

**4**    Although Blankenship testified at Peterson's trial that she did not recall how the baggie of methamphetamine and pipe got into her pants, she also testified that she told Deputy Lopes the truth. Blankenship also testified that the oxycodone pills belonged to her.

arrested.  At the end of his testimony the following colloquy occurred:

> "[PROSECUTOR]:  …  So after you finished the DUI investigation [of Peterson] did you do something else?
>
> "[OFFICER WILLIAMS]:  I actually did.
>
> "[PROSECUTOR]:  What was that?
>
> "[OFFICER WILLIAMS]:  Based on my investigation and through further investigation I learned [that] Marc Peterson was a drug dealer.
>
> "[DEFENSE COUNSEL]:  Objection, relevance.
>
> "THE COURT:  Sustained.
>
> "[DEFENSE COUNSEL]:  Calls for speculation.
>
> "[PROSECUTOR]:  Thank you, nothing further.
>
> "THE COURT:  Thank you.
>
> "[DEFENSE COUNSEL]:  I make a motion to strike that last answer.
>
> "THE COURT:  Stricken."

After the jury was excused for the day, defense counsel made a motion for a mistrial based on Officer Williams's testimony that he learned Peterson was a drug dealer.  The court took the motion under submission.

The following morning, out of the presence of the jury, the court denied the motion stating:

> "The Court is going to deny the motion for a mistrial based on the Court's belief that the statement is not relevant, certainly it's prejudicial and a curative statement to the jury will cure the – any prejudice to Mr. Peterson."

After the jury was brought into the courtroom, the court instructed them as follows:

> "At the end of the testimony yesterday of Dale Williams[,] Mr. Williams made reference that Mr. Marc Peterson was a drug dealer, that

6.

answer was objected to by [Defense Counsel], the objection was sustained and stricken, and at this time I want to reiterate the Court's ruling.

"That statement is irrelevant to these proceedings, there is no evidence to support it. You're admonished that you're not to consider or mention that statement during deliberations, and you're not to consider that statement for any purpose whatsoever in this trial."

Subsequently, Officer Smith while testifying about the search on June 7, 2013, of the premises of the residence where Peterson lived with his mother, the following colloquy occurred:

"[PROSECUTOR]: And did you find anything else that caught your attention during the search?

"[OFFICER SMITH]: I did.

"[PROSECUTOR]: And what was that?

"[OFFICER SMITH]: In the back shed was packaging material, sandwich baggies - -

"[DEFENSE COUNSEL]: Objection, relevance.

"THE COURT: Sustained."

## DISCUSSION

*The Motion for a Mistrial*

Peterson cites Officer Williams's testimony that Peterson was a drug dealer and Officer Smith's testimony that he found "packaging materials, sandwich baggies" during the search of a shed on June 7, 2013, to contend he was denied his right to due process and his right to a fair trial. Peterson further contends he was prejudiced by the officers' testimonies with respect to the transportation of methamphetamine offense charged in count 1 because they made it easier for the jury to conclude he had knowledge and control of the methamphetamine Blankenship hid in her underwear. Thus, according to

7.

Peterson, the court erred when it denied his motion for a mistrial and this requires reversal of his conviction for transportation of methamphetamine.[5]

Peterson acknowledges that defense counsel did not renew his motion for a mistrial after the testimony noted above by Officer Smith. However, he posits several reasons why we should consider Smith's testimony in determining the merits of his motion for a mistrial even though he did not renew his mistrial motion after Smith's testimony.[6] Alternatively, Peterson contends he was denied the effective assistance of counsel if this court finds that "a second motion was forfeited."

Although Peterson moved for a mistrial only after Officer Williams had testified, Peterson's claim that he was denied the effective assistance of counsel by defense counsel's failure to renew his mistrial motion requires us to consider the propriety of the court's denial of his motion in light of the statements by both officers. Therefore, we consider the court's denial of Peterson's motion for mistrial as if it had been made after Officer Smith's objectionable testimony. Having done so, we reject Peterson's claims.

"A motion for mistrial should be granted '"only when a party's chances of receiving a fair trial have been irreparably damaged."' (*People v. Clark* (2011) 52 Cal.4th 856, 990.) Whether a particular incident is so prejudicial that it warrants a mistrial 'requires a nuanced, fact-based analysis,' which is best performed by the trial court. [Citation.] We review a trial court's order denying a motion for mistrial under the

---

**5**      The granting of a mistrial requires a new trial on all the charged offenses and allegations. (Cf. *People v. Ledesma* (2006) 39 Cal.4th 641, 683 ["The issue here [when the defendant moves for a mistrial] is whether the witness's comment was so incurably prejudicial that a new trial was required."].) Peterson has not cited, nor are we aware of, any authority that allows the court to grant a mistrial motion as to only some of the counts charged against a defendant.

**6**      For example, Peterson contends we may consider this testimony because a second mistrial motion would have been futile given the court's analysis of his original mistrial motion.

deferential abuse of discretion standard. [Citation.] 'Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1094.)

Officer Williams's testimony that Peterson was a drug dealer was brief and defense counsel's immediate objection to it was sustained by the trial court. Additionally, the court minimized the negative impact of this testimony by giving the jury a curative admonition. Officer Smith's testimony was less objectionable than Officer Williams's testimony because it was brief, incomplete, and ambiguous. It also did not directly attribute the "packaging material" to Peterson. Additionally, the court sustained defense counsel's objection to Smith's testimony and during jury instructions the court instructed the jury that they were to ignore a question if the court sustained an objection to it.

Further, "a trial court can almost always cure the prejudice of an improperly volunteered statement by granting a motion to strike and charging the jury with an appropriate curative instruction. [Citations.]" (*People v. Navarrete* (2010) 181 Cal.App.4th 828, 836.) Additionally, the jury is presumed to follow the court's instruction. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Thus, the prejudicial impact of Officer Williams's and Officer Smith's testimonies, if any, was minimal.

Moreover, the evidence of Peterson's guilt on all the charges was overwhelming because Peterson did not rebut any of the prosecution's evidence. However, since Peterson contends that the testimony at issue prejudiced him only with respect to count 1, we limit our discussion on the strength of the prosecution's case on this count.

In December 2013, when this matter was tried, the elements of transportation of a controlled substance were: (1) transportation of a controlled substance by the defendant; (2) knowledge by the defendant of its presence; (3) knowledge by the defendant of its

character as a controlled substance; (4) proof that the substance transported was controlled substance; and (5) proof that the controlled substance was in a usable amount. (CALCRIM No. 2300, but see *infra*.)

The defense did not rebut Deputy Lopes's testimony that Blankenship told him that just before Peterson pulled over, he handed her the pipe and the baggie containing two grams of methamphetamine and told her to hide them in her underwear. Thus, the evidence unequivocally established that Peterson transported the substance found in the baggie, that the substance transported was a controlled substance, i.e., methamphetamine, that it was a usable amount, and that Peterson was aware of its presence in car because he handed it to Blankenship prior to stopping the car. Additionally, it was undisputed that Peterson was aware of the narcotic character of methamphetamine. Thus, the evidence that Peterson transported methamphetamine was also overwhelming.[7]

Additionally, officers found four pills next to Peterson on the console and four more on the front floorboard. If the brief objectionable testimony by Officer Williams or Officer Smith had prejudiced the jury against Peterson, it is unlikely they would have acquitted him of possession of oxycodone as charged in count 3. Conversely, his acquittal on this count indicates that they were not influenced by either officer's objectionable testimony. Therefore, since Peterson has not shown that the officers' improper testimonies prejudiced him, we conclude that the court did not abuse its discretion when it denied Peterson's motion for a mistrial.

---

**7**    It is clear from the elements of transportation of a controlled substance listed above that control is not an element of this offense, as Peterson contends. In any case, the evidence unequivocally established that Peterson had knowledge of and exercised control over the methamphetamine while it was in his possession before he handed it to Blankenship. Thus, we reject Peterson's contention that the officers' testimonies prejudiced him because they made it more likely the jury would find that he had knowledge of and exercised control over the methamphetamine.

"To prevail on [an ineffective assistance of counsel] claim, [a defendant] must establish his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. [Citations.]" (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007.)

It follows from our discussion above that defense counsel did not provide ineffective assistance of counsel by his failure to renew the motion for a mistrial after Officer Smith's testimony because any such motion should have been denied. (*People v. Memro* (1995) 11 Cal.4th 786, 834 [counsel not required to make futile or frivolous motions].) Accordingly, we also reject Peterson's ineffective assistance of counsel claim.

### Peterson's Conviction for Transportation of Methamphetamine

Respondent contends that due to a change in the law that became effective while Peterson's appeal has been pending, Peterson's conviction for transportation of methamphetamine must be reversed and remanded for further proceedings. Peterson agrees that his transportation of methamphetamine conviction must be reversed, but he contends that retrial of that count is barred by the double jeopardy clause of the federal Constitution. We agree with respondent.

Health and Safety Code section 11379, subdivision (a) provides: "[E]very person who *transports* ... any controlled substance ... shall be punished ... for a period of two, three, or four years." (Italics added.) At the time of Peterson's convictions, courts interpreted transport to include transport for personal use. (*People v. Rogers* (1971) 5 Cal.3d 129, 134.) But the amendment added this definition in subdivision (c): "For purposes of this section, 'transports' means to transport *for sale.*" (Health & Saf. Code, § 11379, subd. (c), italics added.) (Added by Stats. 2013, ch. 504, § 2, p. 4151.)

We agree that the issue of whether Peterson was transporting the methamphetamine *for sale* was not tried in his case and that the Legislature's amendment to Health and Safety Code section 11379 benefits Peterson by imposing an additional

11.

element of the charged offense that was not established at trial. Therefore, absent a savings clause, the amendment to Health and Safety Code section 11379 must be applied retroactively to Peterson's case if it was not final when the amendment took place. (*In re Estrada* (1965) 63 Cal.2d 740, 745; *People v. Rossi* (1976) 18 Cal.3d 295, 298-299.)

Health and Safety Code section 11379, as amended, does not contain an explicit savings clause prohibiting retroactive application of the amended statutory language, nor is there any other indication of "clear legislative intent" that the amended statutory language is only to be applied prospectively. (*People v. Rossi, supra,* 18 Cal.3d at p. 299.) In addition, Peterson's conviction for transportation of methamphetamine was not final on January 1, 2014, the date the amendment went into effect. (*Id*. at p. 304 [a conviction is not final until it has reached final disposition in the highest court authorized to review it].) Therefore, Peterson is entitled to the benefit of the additional element, and his conviction for transporting methamphetamine must be reversed. Further, "[w]here, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence." (*People v. Figueroa* (1993) 20 Cal.App.4th 65, 72.) Such retrial is not barred by the double jeopardy clause. (*Id*. at p. 72, fn. 2).

## DISPOSITION

The judgment on count 1, transportation of methamphetamine, is reversed and the matter is remanded for further proceedings including possible retrial and/or resentencing. In all other respects, the judgment is affirmed.

12.