# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

JERRY ANTHONY FAIAL,
Defendant and Appellant.

S273840

First Appellate District, Division Three
A159026

San Mateo County Superior Court
SC083808

July 31, 2025

Justice Jenkins authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Evans concurred.

PEOPLE v. FAIAL

S273840


Opinion of the Court by Jenkins, J.


Enacted in 2020, Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950) limited probation terms for defendants convicted of most felonies to two years. (Pen. Code,[1] § 1203.1, subd. (a), as amended by Stats. 2020, ch. 328, § 2.) As a result, subject to certain exceptions not relevant here, defendants who are placed on probation for these felonies *after* the legislation became operative on January 1, 2021, will serve no longer than a two-year term.

Defendants already serving a probation term exceeding two years on January 1, 2021, may also be entitled to a reduced term. As to defendants on probation as of that date whose cases are not final, Courts of Appeal have uniformly found that Assembly Bill 1950 applies retroactively under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). (See, e.g., *People v. Greeley* (2021) 70 Cal.App.5th 609, 627; *People v. Lord* (2021) 64 Cal.App.5th 241, 245–246; *People v. Sims* (2021) 59 Cal.App.5th 943, 964 (*Sims*); *People v. Quinn* (2021) 59 Cal.App.5th 874,

---

[1]    All further statutory references are to the Penal Code.  In 2021, the Legislature repealed the 2020 enactment but added substantively identical provisions in a new section 1203.1, while redesignating former section 1203.1, subdivision (m), as section 1203.1, subdivision (*l*). (Stats. 2021, ch. 257, §§ 21–22; Assem. Bill No. 177 (2021–2022 Reg. Sess.).)  This development does not affect our analysis, and we consider defendant's claim based on the operative date of the 2020 enactment:  January 1, 2021.

881–885 (*Quinn*).) Courts in these cases have shortened the length of the probation term to a total of two years in accordance with Assembly Bill 1950.

However, as to defendants whose probation was revoked and terminated before January 1, 2021, Courts of Appeal have disagreed on whether Assembly Bill 1950's ameliorative changes apply in cases that are not yet final. (See, e.g., *People v. Faial* (2022) 75 Cal.App.5th 738 [Assembly Bill 1950 does not apply]; but see *People v. Jackson* (2023) 93 Cal.App.5th 207, review granted Sept. 13, 2023, S281267; *People v. Canedos* (2022) 77 Cal.App.5th 469, review granted June 29, 2022, S274244; *People v. Butler* (2022) 75 Cal.App.5th 216, review granted June 1, 2022, S273773; cf. *Kuhnel v. Superior Court* (2022) 75 Cal.App.5th 726, review granted June 1, 2022, S274000.)

In this case, the trial court ordered the defendant's four-year probation term revoked in May 2019, and later ordered termination of his probation and execution of his suspended sentence. The defendant timely appealed. When Assembly Bill 1950 became operative on January 1, 2021, the defendant was in prison serving his sentence. Under existing law, the defendant's appeal — which is before us here — rendered his case not yet final. (See *People v. Esquivel* (2021) 11 Cal.5th 671, 680 (*Esquivel*).) As such, for purposes of Assembly Bill 1950's retroactive application under *Estrada*, his probation term remained extant when the ameliorative legislation became operative. We conclude, therefore, that Assembly Bill 1950 can be applied retroactively to shorten the defendant's period of probation such that his probation term expired two years after he was sentenced. After reviewing the text of the statute in light of its history and purposes, we conclude that Assembly Bill 1950

authorizes relief from the consequences of acts occurring beyond the two-year period. Accordingly, the judgment affirming the orders revoking and terminating his probation and executing his suspended sentence must be set aside.

## I.

On October 6, 2016, a trial court found Jerry Anthony Faial guilty of petty theft with a prior theft-related conviction (§ 666, subd. (a); count 4) and two counts of making criminal threats (§ 422, subd. (a); counts 5 and 6). These counts related to his theft of a juicer from a Daly City department store and threats he made to the store's loss prevention employees. The court also found Faial guilty of first degree burglary (§ 460, subd. (a); count 1) based on a separate incident in which Faial entered his father's home in violation of a stay away order and took tools. As to the burglary count, the trial court found Faial had been released on bail related to the department store theft when he committed the burglary. (§ 12022.1.) Allegations that Faial suffered two prior strike offenses (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), two prior serious felony convictions (§ 667, subd. (a)(1)), and two prior prison terms (§ 667.5, subd. (b)), were either found true or admitted.

At a May 4, 2017, sentencing proceeding, the trial court imposed a 12-year sentence, consisting of the low term of two years for first degree burglary, two consecutive five-year terms for the section 667, subdivision (a)(1) priors, and concurrent terms for the petty theft with a prior count and the criminal threat counts. The court did not rely on the section 667.5, subdivision (b) prior prison term enhancements in calculating Faial's final sentence. The court thereafter suspended execution of sentence and placed Faial on four years' probation with the

condition that he complete a residential treatment program in lieu of a one-year jail term. In November 2017, Faial admitted violating his probation by failing to complete the program; the trial court revoked probation but reinstated it under the same terms and conditions after ordering Faial to complete a different treatment program.

On May 15, 2019, the trial court summarily revoked Faial's four-year probation based on six alleged violations committed between January and May 2019. The alleged violations involved Faial's failure to abstain from the use and possession of alcohol, resisting arrest, and possession of a knife and drug paraphernalia. In November 2019, a different judge found the alleged probation violations true, terminated Faial's probation, and ordered execution of his previously suspended 12-year sentence.

Faial timely appealed, asserting he was entitled to Assembly Bill 1950's ameliorative effects with respect to the length of his probation term. Specifically, he asserted that Assembly Bill 1950 applied "retroactively to shorten his probation term from four years to two years, thereby retroactively depriving the trial court of jurisdiction to revoke his probation after passage of the two-year mark and rendering the revocation and termination of his probation invalid." Assembly Bill 1950's retroactive application, he argued, meant that his probation ended on May 4, 2019, "before any proceedings to revoke his probation had been initiated."

Rejecting Faial's argument, the Court of Appeal concluded that "Assembly Bill 1950 applies retroactively to a specific class of persons — i.e., defendants whose probation has not been revoked and terminated." Faial does not fall within this class,

the court reasoned, because his probation had been revoked and terminated over a year before the legislation took effect. The Court of Appeal found "no indication" that the Legislature, in passing Assembly Bill 1950, "intended to extinguish a defendant's accountability for probation violations," "to excuse conduct that was addressed as a violation of probation rather than prosecuted as a new criminal charge," or "to otherwise invalidate revocation and termination orders predating January 1, 2021." In the court's view, the legislation's "basic aims" — "to incentivize compliance and allow for increased supervision and services for offenders working toward rehabilitation" — "are inconsequential for former probationers like defendant."

In this court, Faial maintains that because his appeal from the orders revoking and terminating probation is pending, his case is not yet final for purposes of applying *Estrada*; he is, therefore, entitled to Assembly Bill 1950's ameliorative benefits. He further contends that under Assembly Bill 1950, his term of probation ended by operation of law before the court issued orders revoking and terminating probation. For his part, the Attorney General concedes that Faial's case is not final under *Estrada*, but he asserts the *Estrada* rule does not dictate "*how* A.B. 1950 operates — that is, what sorts of nonfinal cases it will affect." (See *People v. Prudholme* (2023) 14 Cal.5th 961, 969 (*Prudholme*) ["deciding that a statute applies retroactively 'does not answer the [separate] question of how that statute should be applied' "].) The Attorney General maintains that Assembly Bill 1950's legislative history does not "reflect any intent to revivify a probation term that had already been properly terminated pursuant to section 1203.2 in order to unwind a lawfully executed sentence following a valid revocation and termination."

We granted review to resolve this question.

## II.

Under the prior version of section 1203.1, courts could grant probation[2] "for a period of time not exceeding the maximum term for which the person could be imprisoned" (Legis. Counsel's Dig., Assem. Bill No. 1950 (2019–2020 Reg. Sess.); Stats. 2020, ch. 328) or for "not over five years" (former § 1203.1) where the maximum sentence was five years or less.) The Legislature enacted Assembly Bill 1950 in part to shorten the length of probation for most felonies.  (§ 1203.1, subd. (a).) Effective January 1, 2021, section 1203.1, subdivision (a), provides in relevant part:  "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time *not exceeding two years*, and upon those terms and conditions as it shall determine." (§ 1203.1, subd. (a), italics added; Legis. Counsel's Dig., Assem. Bill No. 1950 (2019–2020 Reg. Sess.); Stats. 2020, ch. 328.)

Thus, since January 1, 2021, section 1203.1 has prohibited courts from imposing a probation term exceeding two years unless the underlying offense is a violent felony listed in section 667.5, subdivision (c); is subject to a specified probation length; or is specifically excluded from the statute's two-year limit.  (See § 1203.1, former subds. (a), (m), added by Stats. 2020, ch. 328, § 2, now subds. (a), (*l*).)  Apart from these exceptions, Assembly Bill 1950 "reduced the maximum allowable probation term for a

---

[2]    The term "probation" as used in the Penal Code means "the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer."  (§ 1203, subd. (a).)

wide range of offenses." (*Prudholme*, *supra*, 14 Cal.5th at p. 976.) It did not, however, "reduce the punishment for any particular offense or enhancement." (*Ibid.*)

Proponents of Assembly Bill 1950 argued that a two-year limit on probation terms was appropriate because "probation supervision is most beneficial in the early part of a probation term"; "increased levels of supervision can lead to increased involvement with the criminal justice system due to the likelihood that minor violations will be detected"; and "reducing the length of probation terms would enable probation officers to more effectively manage their caseloads by focusing resources on those most at risk of reoffending." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended June 10, 2020, p. 5; see *Quinn*, *supra*, 59 Cal.App.5th at pp. 879–880; see also *Sims*, *supra*, 59 Cal.App.5th at p. 959.) A probation term of two years would also be long enough for defendants to "connect to resources" for housing and job training and to complete any required counseling or training as a condition of probation. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended May 6, 2020, p. 6 (Assembly Committee on Public Safety Analysis).)

Assembly Bill 1950's legislative history emphasized that extended supervision and scrutiny of probationers who must comply with various terms and conditions of probation — e.g., mandatory meetings, home visits, and regular drug testing — increase the probability of future incarceration based on minor infractions. (See *Prudholme*, *supra*, 14 Cal.5th at pp. 976–977; Assem. Com. on Public Safety Analysis, *supra*, p. 3 [Author's statement: " 'Probation — originally meant to reduce recidivism — has instead become a pipeline for re-entry into the

carceral system' "].)  An analysis by the Assembly Committee on Public Safety explained, "[i]f the fact that an individual is on probation can increase the likelihood that they will be taken back into custody for a probation violation that does not necessarily involve new criminal conduct, then shortening the period of supervision is a potential avenue to decrease individuals' involvement in the criminal justice system for minor infractions." (Assem. Com. on Public Safety Analysis, *supra*, at p. 5.)  Legislative analyses also explained that shortening probation periods would not only " 'decrease the amount of time that an individual must suffer for a prior misdeed,' " it would also " 'incentiviz[e] compliance.' "  (Assem. Com. on Public Safety, *supra*, p. 7; Assem. Com. on Appropriations, Analysis of Assem. Bill. No. 1950 (2019–2020 Reg. Sess.) as amended May 21, 2020, p. 2.)

Relatedly, we have recognized that reduction of an authorized probationary period speaks not "to punishment precisely, but to the efficiency and efficacy of probation as a rehabilitative device in a variety of circumstances.  (See § 1203.1, subd. (l).)" (*Prudholme*, *supra*, 14 Cal.5th at p. 977.) Assembly Bill 1950 "reflects a determination by the Legislature that a shorter period of probation would more effectively achieve the rehabilitative goals undergirding probation by concentrating services earlier in the probation cycle when they are predicted to be most effective.  Further, according to the bill's author, to the extent that ' "half of those [probation] violations are technical and minor in nature, such as missing a drug rehab appointment or socializing with a friend who has a criminal record" ' (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended June 10, 2020, p. 4), a shorter period of probation would reduce the

length of time during which a defendant could violate probation on such technicality. (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950, *supra,* as amended May 6, 2020, pp. 5–6.)" (*Prudholme, supra,* 14 Cal.5th at pp. 976–977.)

Against this backdrop, we next consider whether and how Assembly Bill 1950 applies retroactively here given that the trial court ordered Faial's probation revoked and terminated before the legislation became operative. Our recent decisions in *Prudholme, supra,* 14 Cal.5th 961 and *Esquivel, supra,* 11 Cal.5th 671 provide significant guidance on these questions.

## III.

A new statute is presumed to operate prospectively absent an express declaration of retroactivity or a clear indication the Legislature or electorate intended otherwise. (*Prudholme, supra,* 14 Cal.5th at p. 967; see § 3 ["No part of [the Penal Code] is retroactive, unless expressly so declared"]; see also *Estrada, supra,* 63 Cal.2d at p. 744.) In *Estrada,* we explained that "[w]hen the Legislature amends a statute so as to *lessen* the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage *provided the judgment convicting the defendant of the act is not final.*" (*Estrada, supra,* 63 Cal.2d at p. 745, italics added; see *People v. Padilla* (2022) 13 Cal.5th

152, 160 (*Padilla*) [explaining *Estrada*'s limited rule of retroactivity for "new laws that mitigate punishment"].)

As we explained in *Esquivel*, "*Estrada*'s presumption of retroactivity has been a fixture of our criminal law for more than 50 years" and "continues to stand for the proposition that (i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date." (*Esquivel, supra,* 11 Cal.5th at p. 675.) In *Prudholme*, we recently affirmed that Assembly Bill 1950 is an ameliorative statute that may be applied retroactively under *Estrada.* (*Prudholme, supra,* 14 Cal.5th at p. 969.) "Although probation is not considered a traditional form of punishment, in light of [certain] restrictions on personal liberty contemplated by the imposition of probation, we conclude the rationale of *Estrada* applies equally" in that context. (*Id.* at p. 968.) By limiting probation terms to two years, " 'Assembly Bill No. 1950 has a direct and significant ameliorative benefit for at least some probationers who otherwise would be subject to additional months or years of potentially onerous and intrusive probation conditions.' " (*Id.* at p. 969, quoting *Sims, supra,* 59 Cal.App.5th at p. 959.) Because a defendant's violation of these probation conditions could, in turn, lead to the execution of a suspended sentence, the longer a defendant is exposed to such conditions the greater the possibility for punishment. (See *ante,* at pp. 7–8.)

Given the Legislature's determination that "as a matter of policy, the longer probationary terms previously allowed were unduly costly and counterproductive, and that a reduced maximum probationary term serves the public interest" (*Prudholme, supra,* 14 Cal.5th at p. 969), we found in *Prudholme*

"adequate support for the conclusion that the Legislature 'must have intended' to reduce the available probationary period in 'every case to which [the amended statute] constitutionally could apply.'" (*Ibid*.)  On that point, we did not perceive any contrary intent regarding the retroactivity of Assembly Bill 1950.

## A.

Under *Estrada*, whether an ameliorative law applies retroactively in a given case depends on finality.  As we explained in *Esquivel*, *supra*, 11 Cal.5th at page 678, finality concerns "the criminal proceeding as a whole," including direct review of an order for execution of sentence.  (See *People v. Lopez* (2025) 17 Cal.5th 388, 392 ["A criminal case is only reduced to a singular, final judgment following the conclusion of the entire criminal case or prosecution"].)  Direct review of the order consists of an appeal to the Court of Appeal, a petition for review in this court, and a petition for writ of certiorari before the United States Supreme Court. (*Esquivel*, at p. 680; see *People v. Vieira* (2005) 35 Cal.4th 264, 305–306.)  "Through all these steps, a suspended execution sentence is not final, and the *Estrada* presumption remains available." (*Esquivel*, at p. 680.)

As pertinent here, we stated in *Esquivel* that "[a] case in which a defendant is convicted and placed on probation with execution of sentence suspended is not final while direct review of the order imposing sentence remains ongoing." (*Esquivel, supra*, 11 Cal.5th at p. 680.)  As in *Esquivel*, the relevant ameliorative legislation in this case, Assembly Bill 1950, became operative after the trial court imposed probation and suspended execution of Faial's sentence, but before the conclusion of his appeal from the court's order revoking and terminating

probation and executing the suspended sentence. Because Faial's case is "pending on appeal from an order causing a previously imposed sentence to take effect" (*Esquivel*, at p. 680), his case is not final for purposes of *Estrada*'s rule of retroactivity. (See *ibid*.) We conclude, therefore, that Assembly Bill 1950 "presumptively applies" to Faial's case. (*Esquivel*, at p. 680.)

In light of *Esquivel*, the Attorney General concedes that Assembly Bill 1950 operates retroactively under *Estrada* and that Faial's case is not final for purposes of *Estrada*. (See *Esquivel, supra*, 11 Cal.5th at p. 676 ["well settled" rule "that a matter is not 'final' for this purpose merely because the defendant has already been sentenced"].) Thus, the trial court's order terminating Faial's probation — from which Faial has appealed — does not provide the " ' "last word" ' " and is not dispositive on whether Faial is entitled to relief under Assembly Bill 1950. (*Padilla, supra*, 13 Cal.5th at p. 161.)

## B.

Nevertheless, as the Attorney General asserts, the fact that this case is not final under *Estrada* is not dispositive of whether Faial is entitled to relief because *Estrada* "does not answer the question of *how* [Assembly Bill 1950] should be applied." (*People v. Stamps* (2020) 9 Cal.5th 685, 700; see *Prudholme, supra*, 14 Cal.5th at p. 969.) As to defendants who were on probation when the legislation became operative, Assembly Bill 1950's application is generally straightforward and settled: courts have simply shortened the existing probation term. (See *ante*, at p. 2.)

However, the Attorney General asserts Faial is not entitled to any relief under Assembly Bill 1950 because he was,

in fact, not on probation when the legislation became operative. In essence, the Attorney General argues that there is no "available probationary period" to reduce (*Prudholme*, *supra*, 14 Cal.5th at p. 968) where, as here, a trial court ordered revocation and termination of probation before Assembly Bill 1950 became operative. He reasons as follows: "[P]ursuant to section 1203.2, subdivision (c), upon termination [of probation], imposition of judgment, and pronouncement or execution of sentence, a defendant is no longer on 'probation' as that term is defined in section 1203." He further argues that "[b]y its express terms, section 1203.1, the statute that Assembly Bill 1950 amended, governs the court's authority to *grant* probation and covers all *active* grants of probation. Nothing in its text or its provisions addresses or governs a termination of probation or a post-termination execution or imposition of sentence," including authorizing courts to "unwind orders terminating probation." "By amending the length of an existing term of probation without also amending the longstanding rules governing termination, the Legislature created a clear ameliorative benefit for those defendants who were actually on probation, without providing any comparable ameliorative benefit for those who were not on probation because it had already been terminated and sentence imposed or executed." Finally, because the trial court ordered Faial's probation revoked and terminated before Assembly Bill 1950 became operative, the Attorney General argues that this case is instead governed by sections 1203.2 and 1203.3, authorizing the court to revoke or terminate probation.[3]

_____

[3] As relevant here, section 1203.2 provides: "Upon any revocation and termination of probation the court may, if the

Faial responds that Assembly Bill 1950 provides him relief because "the finality of a defendant's case is the bright line for the application of an ameliorative statute." He asserts that because his case is not final for *Estrada* purposes, amended section 1203.1 retroactively shortens his probation period to a two-year period starting from when he was sentenced on May 4, 2017. His probation term, therefore, expired by operation of law on May 4, 2019.[4] Beyond the expiration of his probation term, the trial court could neither revoke nor terminate his probation nor order execution of the suspended 12-year prison sentence. (See *People v. Leiva* (2013) 56 Cal.4th 498, 514–515 [defendant's

---

sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced. However, if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect. In either case, the person shall be delivered over to the proper officer to serve their sentence, less any credits herein provided for." (§ 1203.2, subd. (c); see § 1203.3, subd. (a) [§ 1203.3 authorizes courts "at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence," and outlines procedures for the modification of probation terms and conditions]; *id*., subd. (b)(1); see *People v. Chavez* (2018) 4 Cal.5th 771, 782 (*Chavez*) ["Sections 1203.2 and 1203.3 elaborate upon the fundamentally revocable nature of probation"].)

[4]     Although the record contains evidence that Faial may have violated his probation in January and March 2019, before a two-year probation period would have expired on May 4, 2019, the trial court did not order revocation before that date. (See *People v. White* (1982) 133 Cal.App.3d 677, 682–683.) The Attorney General does not argue that probation violations committed in early 2019 render Faial ineligible for relief under Assembly Bill 1950, and we express no opinion on that question. (Cf. *Kuhnel v. Superior Court, supra,* 75 Cal.App.5th 726, review granted.)

conduct occurring outside the probationary period may not be basis for finding a probation violation].) Accordingly, Faial contends the trial court's orders revoking and terminating his probation are invalid. (See *Chavez, supra*, 4 Cal.5th at p. 783 ["the court cannot extend the term of probation, change its conditions, or otherwise subject the defendant to punishment in lieu of the successfully completed probation"]; § 1203.3.)

At the outset, unlike the Attorney General, we do not find dispositive the fact that the trial court ordered revocation and termination of Faial's probation term before Assembly Bill 1950 became operative. Because Faial subsequently appealed the trial court's order, the question whether the trial court validly revoked and terminated his probation — and ordered execution of the suspended sentence — remains undecided. "[W]hen an appeal from an order causing punishment to take effect is ongoing . . . [,] the criminal proceeding remains pending, and closure has yet to be obtained." (*Esquivel, supra*, 11 Cal.5th at p. 680.) As such, at the time Assembly Bill 1950 became operative, Faial's four-year probation term remained pending and, therefore, extant for purposes of *Estrada.* Given this circumstance, we conclude that Assembly Bill 1950 can retroactively apply to shorten Faial's probation term to two years from when probation was imposed. (See *People v. McKenzie* (2020) 9 Cal.5th 40, 50 (*McKenzie*) [defendant may "tak[e] advantage of ameliorative amendments that took effect while he was appealing from the subsequent revocation of his probation and imposition of sentence"].)

Indeed, the Attorney General's contention that there is no probation term to shorten even when an order revoking and terminating probation is appealed is inconsistent with sections 1203.2 and 1203.3, which outline a trial court's authority to

modify probation. If an appellate court reverses an order terminating probation, the trial court on remand has full "authority" under section 1203.3, subdivision (a) to "modify" or "change" the terms of probation, or even to "terminate the period of probation" and "discharge the person held." (See *Esquivel*, *supra*, 11 Cal.5th at p. 680 ["when an appeal from an order causing punishment to take effect is ongoing . . . [,] [e]ven the terms of probation itself remain subject to modification"]; *People v. Bolian* (2014) 231 Cal.App.4th 1415, 1421–1422 [on remand after appellate reversal of judgment terminating probation, trial court may "modif[y] [the] terms" of probation or "terminate probation"].) Accordingly, because his case is not final and "the terms of probation itself remain subject to modification" (*Esquivel*, at p. 680), Assembly Bill 1950 can retroactively apply to shorten the length of Faial's probation. And as Faial emphasizes, his probation period terminated by operation of law on May 4, 2019.

## IV.

In addition to arguing that the text of the relevant statutes bar retroactive relief under these circumstances, the Attorney General contends that affording Faial relief retroactively would "unwind a lawfully executed sentence following a valid revocation and termination" and would thereby relieve Faial of the expected consequences of violating probation. The Attorney General further insists there is no "indication that the Legislature intended to actually or potentially alter an executed sentence" in order to "release prisoners, who had been probationers, from their sentences." He adds that "simply shortening the maximum period of probation in section 1203.1 neither expressly nor implicitly conveys any intent to so dramatically modify the limitations the Legislature itself has

placed on a court's ability to revisit its decisions," such as altering or vacating a sentence absent error. In the Attorney General's view, "[n]othing in the legislative design or history supports [a] construction of [Assembly Bill] 1950 that would undo a prior revocation and termination of probation."

Leveraging the policy considerations that animated Assembly Bill 1950's passage, the Attorney General contends this result is inconsistent with the primary focus of Assembly Bill 1950, which "was aimed at probationers with a chance to succeed going forward, not those who had been given an opportunity, failed to capitalize on it, and earned the sentence they had been promised should they fail." Given this focus, "the Legislature could not have intended retroactive application beyond shortening probation terms still in effect" which would otherwise "extinguish a defendant's accountability for probation violations" or "invalidate revocation and termination orders predating January 1, 2021." While the Attorney General's views carry some force, we reject his narrow view of the focus of Assembly Bill 1950 for reasons explained more fully below.

## A.

The Attorney General is correct that *Estrada* itself "does not answer the question of *how* [Assembly Bill 1950] should be applied" in this case. (*People v. Stamps*, *supra*, 9 Cal.5th at p. 700.) However, his arguments critically overlook the breadth of the "inference" on which "[t]he *Estrada* rule rests": "in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657; see, e.g., *People v. Braden*

(2023) 14 Cal.5th 791, 801–802; *People v. Frahs* (2020) 9 Cal.5th 618; *People v. Lara* (2019) 6 Cal.5th 1128, 1135.) Absent any savings clause, "the statute must demonstrate contrary indications of legislative intent ' "with sufficient clarity" ' in order to rebut the *Estrada* rule." (*Frahs*, at p. 628; see *People v. Rossi* (1976) 18 Cal.3d 295, 299 (*Rossi*) ["in the absence of clear legislative intent to the contrary" a defendant should receive retroactive "benefit of a mitigation of punishment" if conviction is not final].)[5]

We also do not agree with the Attorney General's view that "unwind[ing]" legal consequences of past acts is impermissible

---

[5]    *Prudholme* involved Assembly Bill 1950's retroactive effect on probation terms set by plea agreements. Determining the proper remedy in that context was "complicated" by the existence of a second statute that precluded a court, absent the People's agreement, from altering the terms of an accepted plea bargain in a way more favorable to a defendant. (*Prudholme, supra*, 14 Cal.5th at p. 973.) The second statute "created a statutory ambiguity regarding *how* [Assembly Bill 1950] should be applied retroactively to existing plea agreements." (*Prudholme*, at p. 974.)

In light of the Legislature's intent to "reduce the length of probation across the board" pursuant to Assembly Bill 1950 and the circumstance that reducing the defendant's probation term from three to two years would not "so 'fundamentally alter[] the character of the bargain' that the People should have an opportunity to withdraw from the plea agreement," we held that "Assembly Bill 1950 applies retroactively to nonfinal cases and the proper remedy is to modify the probationary term to conform with the new law while maintaining the remainder of the plea agreement." (*Prudholme, supra*, 14 Cal.5th at pp. 963, 977–978.) In this case, there is no similar "statutory ambiguity" (*id.* at p. 974) arising from the "intersection of [the] statutory scheme of [probation] and the retroactivity rule of *Estrada*" (*id.* at p. 971).

for purposes of the *Estrada* rule because this would "obliterate" or "extinguish" a defendant's accountability for prohibited conduct. We have long rejected the argument that defendants may not benefit from ameliorative statutes that eliminate consequences for past acts. (See *McKenzie, supra,* 9 Cal.5th at pp. 50–51, citing *Rossi, supra,* 18 Cal.3d at p. 302, fn. 8 and *People v. Collins* (1978) 21 Cal.3d 208, 213 (*Collins*).)

For instance, in *Rossi, supra,* 18 Cal.3d at page 298, the defendant was convicted of an offense — and "the trial court rendered [a] judgment of conviction" — based on acts that were criminal when committed. Under a statutory amendment that became operative "after the rendition of judgment but before its finality by the lapse of the period for appeal," "the acts which defendant committed [were no longer] criminal." (*Ibid.*) Applying *Estrada,* we held that "in light of the intervening amendment," the defendant's conviction "must be reversed." (*Ibid.*) In reaching this conclusion, we rejected the dissent's view that the *Estrada* rule does not "permit[] [a] defendant to entirely escape punishment for" acts that were criminal when committed (*id.* at p. 305 (dis. opn. of Clark, J.)), as well as the Attorney General's related argument that the *Estrada* rule does not apply where ameliorative legislation does not "merely reduce[] the punishment for the conduct," but "entirely eliminate[s] any criminal sanction for [the] defendant's acts" (*id.* at p. 301). We explained that *Estrada*'s principles "apply a fortiorari when criminal sanctions have been completely repealed before a criminal conviction becomes final." (*Ibid.*)

In *Collins, supra,* 21 Cal.3d at page 211, we applied *Rossi* to reverse a conviction that was based on conduct that was criminal when committed and when judgment was rendered, but "was no longer a crime" under a statutory amendment that

became operative before the judgment was final. *Rossi*'s holding, we explained, was based on the presumption, derived from common law, that "the Legislature, by removing the proscription from specified conduct, intended to condone *past acts*." (*Collins*, at p. 212, italics added.) Thus, "an amendment eliminating criminal sanctions is a sufficient declaration of the Legislature's intent to bar all punishment for the conduct so decriminalized." (*Id.* at p. 213.) We concluded that because the defendant's conviction was not final and "the act that he admitted, and upon which his guilty plea and conviction were based, was no longer punishable" under the amended statute, his "sentence cannot be allowed to stand." (*Ibid.*)

Our decisions in *Rossi* and *Collins* make clear that for purposes of applying the *Estrada* rule, we have rejected any "distinction . . . between amendments that merely reduce punishment and those that entirely eliminate punishment." (*McKenzie*, *supra*, 9 Cal.5th at p. 50.) "[I]t would be untenable," we have said, "to give defendants the benefit of a reduction in punishment while denying them the benefit of a complete remission of punishment." (*Collins*, *supra*, 21 Cal.3d at p. 213.) "A contrary reading of *Estrada* which confined its holding to amendments which mitigated punishment and excluded amendments which repealed all criminal sanction would clearly lead to absurd results." (*Rossi*, *supra*, 18 Cal.3d at p. 302, fn. 8.) In short, retroactivity principles are not limited to amendments that mitigate or reduce punishment for an offense; they extend to statutes that "decriminalize[] the conduct altogether." (*People v. Babylon* (1985) 39 Cal.3d 719, 725.)

**B.**

To the extent the Attorney General argues that "unwind[ing]" Faial's prison sentence could not have been within the Legislature's contemplation when it shortened probation terms, we have rejected a similar contention in another context. (See *People v. Buycks* (2018) 5 Cal.5th 857 (*Buycks*).) In *Buycks*, we described the *effects* of applying an ameliorative statute retroactively — i.e., those consequences that are not expressly identified but "fairly contemplated" (*id.* at p. 887) by the legislation — as permissible "collateral effect[s]"[6] of retroactive application. (*Id.* at p. 876.) At issue in *Buycks* was Proposition 47 (as approved by voters, Gen. Elec. (Nov. 4, 2014) (Proposition 47)), which redesignated certain narcotics and larceny-related offenses from felonies and "wobblers" to misdemeanors, and permitted defendants previously convicted of these offenses to petition to have such convictions resentenced or redesignated as misdemeanors. (*Buycks*, at p. 871; see § 1170.18.) We explained that "in addition to affording persons the ability to retroactively have their felony convictions be reduced to misdemeanors, Proposition 47, through section 1170.18, subdivision (k), mandates that the reduced conviction '*shall be considered a*

---

[6] *Buycks* also used the term "collateral *consequence*" in reference to " 'the possibility of increased punishment in the event of a subsequent conviction,' " such as an enhancement. (*Buycks, supra*, 5 Cal.5th at p. 878, italics added.) Our focus here is on its discussion of the ameliorative legislation's "retroactive collateral effect on judgments that were not final when the [legislation] took effect." (*Id.* at p. 883; see *id.* at p. 876 [addressing "Proposition 47's collateral effect on enhancements and offenses attached to convictions reduced to misdemeanors"].)

*misdemeanor for all purposes.'* (Italics added.) Subdivision (k) of section 1170.18, therefore, plainly extends the retroactive ameliorative effects of Proposition 47 to mitigate any *future* collateral consequence of a felony conviction that is reduced under the measure." (*Buycks*, at p. 878.)

As pertinent here, we also determined in *Buycks* that "under the *Estrada* rule, [the ameliorative statute] can have *retroactive collateral effect* on judgments that were not final when the initiative took effect." (*Buycks, supra,* 5 Cal.5th at p. 883, italics added.) We explained that "extending the ameliorative effects of felony convictions reduced to misdemeanor convictions under Proposition 47 to enhancements and subsequent offenses derived from those convictions — at least when the judgments involving these felony-based enhancements are not yet final for purposes of *Estrada* — is consistent" with the measure's goal of generating cost savings to invest in various crime prevention and treatment programs by reducing the incarceration terms for those offenders. (*Id.* at p. 888.) We saw no impediment to relieving defendants from the consequences of felony-based enhancements already imposed — even though the legislation did not expressly provide for such relief — "so long as the judgment containing the enhancement was not final when Proposition 47 took effect." (*Id.* at p. 879 [rejecting Attorney General's claim that Prop. 47 could not "retroactively reach back to unravel a felony-based conviction or a felony-based enhancement"].)

In *Buycks*, we further emphasized that when Proposition 47's retroactive application results in reduction of a conviction from a felony to a misdemeanor, a collateral effect of the reduction is to "negate[] an element required to support" a corresponding Three Strikes allegation, i.e., a prior felony

conviction. (*Buycks*, *supra*, 5 Cal.5th at p. 889.) In other words, a concomitant effect of retroactively applying Proposition 47 is to "undo" or "negate" sentencing enhancements predicated on the defendant's underlying felony conviction (see, e.g., §§ 667.5, 12022.1). (*Buycks*, at pp. 880, 890.) We ultimately concluded that when a felony conviction is retroactively redesignated a misdemeanor under Proposition 47, "it can no longer be said that the defendant 'was previously convicted of a felony.'" (*Buycks*, at p. 889.) This "collateral effect," we determined, was "fairly contemplated" within Proposition 47, in part, because the "emphasis on reduced penalties for these narcotics and larceny-related offenses extends logically to enhancements and subsequent offenses connected to those offenses." (*Buycks*, at p. 887, fn. omitted.)

We find *Buycks*'s reasoning applicable in this case. As discussed, because Faial's case is on appeal and his probation term remained extant for purposes of applying *Estrada* at the time Assembly Bill 1950 became operative, the ameliorative legislation may retroactively apply to shorten the term to two years. Accordingly, "it can no longer be said" (*Buycks*, *supra*, 5 Cal.5th at p. 889) that any misconduct committed during Faial's original probation term can support the revocation and termination of probation; instead, the probation term effectively ended by operation of law on May 4, 2019, two years after it was imposed. Similar to *Buycks*, we conclude here that the collateral effect of Assembly Bill 1950's retroactive application is to "undo" or "unravel" the orders terminating Faial's probation and ordering execution of the suspended sentence. (*Buycks*, at pp. 879, 880, 890 [Prop. 47 "can negate a previously imposed section 667.5, subdivision (b), enhancement when the underlying felony

attached to that enhancement has been reduced to a misdemeanor under the measure"].)

Here, consistent with *Buycks*, we find the effect of applying Assembly Bill 1950 retroactively to shorten Faial's period of probation is one "fairly contemplated" within the legislation's underlying purpose. (*Buycks, supra*, 5 Cal.5th at p. 887.) The Legislature "clearly indicated an intent to reduce" the "significant impacts probation places on a defendant's liberty interests" and to realize the "perceived practical advantages and increased efficacy achieved by reducing the probationary term . . . as expeditiously and economically as possible." (*Prudholme, supra*, 14 Cal.5th at p. 969.) Although Assembly Bill 1950's legislative materials "do not speak directly to the issue of retroactivity, they suggest the Legislature viewed [the legislation] as an ameliorative change to the criminal law that would ensure that many probationers avoid imprisonment." (*Sims, supra*, 59 Cal.App.5th at p. 962; *Prudholme*, at p. 977 [quoting *Sims*].) We observe that reducing the number of those in prison for probation violations, in turn, promotes other important legislative goals identified in *Prudholme*: " ' "lowering costs to taxpayers" and "allowing for the possible investment of savings in effective measures proven to reduce recidivism and increasing public safety for all Californians." ' "[7] (*Prudholme,* at p. 966.)

---

[7] Although granting relief to Faial and those in a similar position may not further another of the Legislature's goals in enacting Assembly Bill 1950 — " 'incentivizing compliance' " with probation conditions (Assem. Com. on Public Safety, *supra*, p. 7) — we have never suggested that the *Estrada* presumption applies only if doing so serves *every* legislative goal of

## C.

To the extent the Attorney General argues it is anomalous to apply *Estrada* so as to "ameliorate the sentences being served by failed probationers," as we have previously observed, "some odd results are inevitable with any rule of retroactivity." (*Padilla, supra,* 13 Cal.5th at p. 168, citing *Dorsey v. United States* (2012) 567 U.S. 260, 280 [retroactive application of new mandatory minimum prison sentences for federal drug crimes may create "new set of disparities . . . reflecting a line-drawing effort"].) As we have emphasized, *Estrada*'s rule of retroactivity is understood to apply broadly absent any constitutional constraints. (See *Padilla,* at p. 162 ["We presume the Legislature intends the reduced penalty to be used instead in all cases in which there is no judgment or a nonfinal one, and in which it is constitutionally permissible for the new law to control"].) "And while the Attorney General raises practical concerns" about providing defendants in Faial's position with the retroactive relief sought in this case, "he does not identify any constitutional obstacles to" doing so. (*People v. Lopez, supra,* 17 Cal.5th at p. 399.)

Such a reprieve from punishment, as our prior decisions demonstrate, is fully consistent with and contemplated by *Estrada* and its progeny. (See *Estrada, supra,* 63 Cal.2d at p. 745 ["The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final"]; *Prudholme, supra,* 14 Cal.5th at p. 969 ["Legislature 'must have intended' to reduce the available probationary period

---

ameliorative legislation, or when there is a perfect calibration between all stated goals and retroactive effects.

in 'every case to which it constitutionally could apply' "].)  Under *Estrada,* the ameliorative purpose served by limiting probation terms to two years through Assembly Bill 1950 " 'represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law.' "  (*Estrada,* at p. 745.)  And, as previously discussed (see *ante,* at p. 7), the Legislature has endorsed the shorter two-year probationary term, citing the reduction of revocations based on technical violations, the efficacy of frontloading services for probationers, and the decreased burden on probation officers by reducing caseloads.  It is entirely consistent with that intent to afford retroactive relief to persons who have been reincarcerated because of violations that occurred beyond the time limits the Legislature has now established for keeping a defendant on probation.

Finally, we note that although the legislative history reflects specific concern about probationers being reincarcerated for *technical* probation violations, the Legislature, in amending section 1203.1, did not distinguish between violations that are technical as opposed to criminal.  Instead, as we stated in *Prudholme, supra,* 14 Cal.5th at page 977, the Legislature "enacted Assembly Bill 1950 to reduce the length of probation *across the board.*"  (Italics added.)  Under *Estrada*'s rule of retroactivity, we cannot read into Assembly Bill 1950 a distinction between violations that the Legislature itself did not draw.

The Attorney General contends that Faial's interpretation of Assembly Bill 1950 may result in a "significant windfall" to some defendants who violate probation.  According to the Attorney General, as to conduct that constitutes both a probation violation and a separate crime, a prosecutor may,

based on prior law, have decided to forgo a new criminal prosecution and opted instead to pursue execution of the suspended sentence based on the probation violation. Retroactively invalidating termination orders based on Assembly Bill 1950, the Attorney General suggests, may "forever bar[] punishment" for the criminal conduct because the statute of limitations may have expired on the separate offense.

The Attorney General's argument is unavailing for reasons we have explained above. First, it ignores the fact that *Estrada* and its progeny contemplate that an ameliorative statute's retroactive application may completely eliminate a defendant's punishment for conduct that was criminal when committed. Second, as the Legislature was undoubtedly aware, probation revocation is typically not the only available means of addressing conduct that is independently punishable as a crime. Third, we see no indication that the Legislature viewed the theoretical possibility that criminal prosecution may be time-barred in some cases as a compelling reason to preclude retroactive relief under Assembly Bill 1950 in cases where the termination order is not final. Such a holding would be in tension with Assembly Bill 1950's underlying purpose: "to reduce the length of probation *across the board* in order to increase probationary effectiveness and reduce the likelihood of incarceration for minor probation violations." (*Prudholme, supra*, 14 Cal.5th at p. 977, italics added.) Given this purpose, we decline to base our determination on Assembly Bill's retroactive effect based on "the particular facts of this or any other individual case." (*People v. Francis* (1969) 71 Cal.2d 66, 76–77.)

In conclusion, we hold that in amending section 1203.1, the Legislature has authorized courts, consistent with *Estrada*

principles, to retroactively shorten probation terms exceeding two years in cases where an order terminating probation and executing a prison sentence is not yet final. (See *Prudholme*, *supra*, 14 Cal.5th at p. 969.) Thus, if a probation term is shortened to two years under amended section 1203.1, conduct that would have constituted a probation violation, but is now deemed to have occurred outside this term, may not be the basis for terminating that probation. (See *People v. Leiva*, *supra*, 56 Cal.4th at pp. 514–515; see also *Chavez, supra*, 4 Cal.5th at p. 782 ["Once probation ends . . . a court's power is significantly attenuated. Its power to impose a sentence over the defendant ceases entirely"].) Nothing in the text or legislative history of Assembly Bill 1950 requires a different result.

## V.

Based on the foregoing, we reverse the Court of Appeal's judgment and remand for proceedings not inconsistent with this opinion.

**JENKINS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**   People v. Faial

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 75 Cal.App.5th 738
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S273840
**Date Filed:** July 31, 2025

---

**Court:**  Superior
**County:**  San Mateo
**Judge:**  Robert D. Foiles

---

**Counsel:**

Alan Charles Dell'Ario, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit, Alice B. Lustre and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Alan Charles Dell'Ario
Attorney at Law
P.O. Box 359
Napa, CA 94559
(707) 666-5351

Catherine A. Rivlin
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3850